CARNES, Chief Judge:
Daniel Lugo, a Florida death-row inmate, appeals the district court’s decision dismissing as time-barred his 28 U.S.C. § 2254 petition for a writ of habeas corpus. He also appeals the denial of his Federal Rule of Civil Procedure 60(b) motion, which asked the district court to vacate its judgment dismissing his § 2254 petition as time-barred. Lugo contended in the district court, as he does here, that he is entitled to equitable tolling of the one-year statute of limitations for filing a federal habeas petition under Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). We granted Lugo separate certificates of appealability to appeal each of the district court’s decisions and consolidated the two appeals. We affirm in both appeals.
I. BACKGROUND
Lugo was sentenced to death after he was convicted by a jury of thirty-nine felonies, including kidnapping, attempted extortion, and first-degree murder. See Lugo v. State (Lugo I), 845 So.2d 74, 84-92 (Fla.2003).[1] The facts of the crime, trial, and sentencing proceedings are detailed at length in the Florida Supreme Court’s opinion affirming Lugo’s convictions and death sentences on direct appeal. See id. at 84-119.
The Florida Supreme Court affirmed Lugo’s convictions and death sentences on direct appeal on February 20, 2003, and denied rehearing on May 2, 2003. Id. at 74, 119. The judgment became final when the United States Supreme Court denied Lugo’s petition for a writ of certiorari on October 6, 2003. Lugo v. Florida, 540 U.S. 920, 124 S.Ct. 320, 157 L.Ed.2d 216 *1202 (2003); see also Clay v. United States, 537 U.S. 522, 527, 123 S.Ct. 1072, 1076, 155 L.Ed.2d 88 (2003) (“Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.”); Bond v. Moore, 309 F.3d 770, 772-73 (11th Cir. 2002). Lugo had until October 6, 2004, to file his federal petition for a writ of habeas corpus or to properly file an application for postconviction relief in state court to toll the time for filing his federal petition. See 28 U.S.C. § 2244(d)(1)(A), (d)(2); Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (noting that “the limitations period expires on the anniversary of the date it began to run”).
Over the course of the collateral review process, and at various times, Lugo had five different appointed counsel.
A. CCRC-Southern Region
On May 2, 2003, the Florida Supreme Court appointed Florida’s Office of Capital Collateral Regional Counsel (CCRC)Southern Region to handle Lugo’s postconviction proceedings.[2] See Fla. Stat. § 27.7001, et seq. (creating and structuring Florida’s system for providing representation to indigent capital defendants in collateral proceedings). However, CCRCSouthern Region withdrew from its representation before Lugo’s judgment even became final on direct review because it was representing his codefendant.
B. CCRC-Middle Region
On June 9, 2003, CCRC-Middle Region entered a notice of appearance in state postconviction court, replacing the Southern Region office as counsel for Lugo. Almost four months later, and three days before Lugo’s convictions became final on direct review, CCRC-Middle Region filed a motion to withdraw based on a conflict of interest. That October 3, 2003 motion stated that the CCRC-Middle Region’s lead investigator had a personal conflict of interest because she feared that conducting an investigation in Lugo’s case could endanger members of her family in Colombia. For that reason, and pursuant to Fla. Stat. § 27.703(1), CCRC-Middle Region asked to be permitted to withdraw and for the court to appoint in its place conflict-free registry counsel qualified under Fla. Stat. §§ 27.710 and 27.711.
On October 22, 2003, the state postconviction court denied CCRC-Middle Region’s motion to withdraw. But later, on December 18, 2003, at a court proceeding *1203 where Lugo was not present, that court allowed CCRC-Middle Region to withdraw.[3] Although the record of that proceeding indicates that CCRC-Middle Region’s investigator met with Lugo at least twice and that the agency began collecting records about his case, there is nothing else in it about the extent of CCRC-Middle Region’s efforts on Lugo’s behalf before it withdrew.
C. Roy D. Wasson
The state court appointed registry attorney Roy D. Wasson on January 16, 2004. Wasson did not file a state postconviction motion on Lugo’s behalf under Rule 3.851 of the Florida Rules of Criminal Procedure until October 18, 2004.
There is more to say about Wasson’s conduct, as well as Lugo’s diligence, between the time of Wasson’s appointment and his filing of Lugo’s Rule 3.851 motion. While these facts are relevant to an equitable tolling analysis, many of them were not before the district court when it initially dismissed Lugo’s § 2254 petition. Sorting out when Lugo brought facts to the district court’s attention is important in our review of the two different district court orders, each with its own analytical framework and standard of review.[4] At the time it dismissed the § 2254 petition, the district court had before it only the procedural history of the case and some conclusory allegations by Lugo concerning Wasson. It was not until after that dismissal and when the Rule 60(b) motion was filed that the most egregious facts regarding Lugo’s representation were presented to the district court. Because we consider each appeal in light of what was before the district court when it issued the relevant decision, we limit our background discussion here to those facts which were brought to the district court’s attention by Lugo or the State before the court dismissed the § 2254 petition.
The Rule 3.851 motion filed by Wasson raised various substantive claims on Lugo’s behalf and alleged that he was not competent to participate in postconviction proceedings. After Lugo was evaluated and determined to be competent by two state doctors, Lugo filed pro se motions objecting to a competency hearing and requesting the removal of Wasson as counsel. The parties later stipulated that Lugo was competent to proceed and he withdrew his motion to discharge Wasson.
After holding an evidentiary hearing in 2006, the state postconviction court denied Lugo’s Rule 3.851 motion. On behalf of Lugo, Wasson appealed that denial to the Florida Supreme Court but did not file a state habeas petition in that court because he did not find any meritorious issues to raise.[5] Lugo attempted to file a *1204 pro se amended notice of appeal and state habeas petition. He also filed a motion to remove Wasson as counsel as well as a supplement to that motion. On February 1, 2008, the Florida Supreme Court denied Lugo’s motion to remove Wasson as counsel and struck all of Lugo’s pro se pleadings as unauthorized.
On October 8, 2008, the Florida Supreme Court affirmed the denial of post-conviction relief. Lugo v. State (Lugo II), 2 So.3d 1, 21 (Fla.2008). Fourteen days later Lugo filed pro se motions for rehearing and to hold the rehearing in abeyance pending resolution of bar complaints he had filed against both Wasson and the United States Attorney for the Southern District of Florida. The Florida Supreme Court denied Lugo’s abeyance motion on November 4, 2008.
On November 10, 2008, Wasson moved to withdraw from his obligation to represent Lugo in state and federal postconviction proceedings pursuant to Fla. Stat. § 27.711. In support of that motion, Was-son stated that he had previously advised Lugo that he was “unwilling” to represent him beyond challenging the denial of post-conviction relief in state court, and so the Florida Supreme Court’s affirmance of the trial court’s denial of the Rule 3.851 motion marked the completion of “all of the work that [he was] willing and able to do on behalf of [Lugo].” Beyond that, Wasson alleged that an actual conflict of interest between himself and Lugo existed because Lugo had filed a bar grievance against him accusing him of misconduct. The State opposed Wasson’s motion to withdraw and argued that under Fla. Stat. § 27.711 Was-son’s appointment required him to represent Lugo “throughout all postconviction capital collateral proceedings, including federal habeas corpus proceedings until the capital defendant’s sentence is reversed, reduced, or carried out, and the attorney is permitted to withdraw from such representation by a court of competent jurisdiction.” See Fla. Stat. § 27.711(2), (8). On January 22, 2009, the Florida Supreme Court denied Wasson’s motion to withdraw and denied Lugo’s pro se motion for rehearing.
The Florida Supreme Court issued its mandate on February 10, 2009. The issuance of the mandate ended any statutory tolling period. See Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir.2000) (per curiam) (holding that a state postconviction motion remains pending until the mandate issues in the appeal).
On March 9, 2009, in the Florida Supreme Court, Wasson renewed his motion to withdraw, stating that no federal habeas petition had been filed because the relationship between Lugo and Wasson was “so bad” that Lugo refused to cooperate. Wasson re-alleged the existence of an actual conflict based on Lugo’s pending bar grievance against him. The Florida Supreme Court denied Wasson’s renewed motion to withdraw on April 17, 2009.
On June 20, 2009, Lugo filed a pro se petition for a writ of certiorari in the United States Supreme Court seeking review of the Florida Supreme Court’s denial of his motion for postconviction relief. On October 5, 2009, the Supreme Court denied that petition. Lugo v. Florida, 558 U.S. 867, 130 S.Ct. 182, 175 L.Ed.2d 114 (2009).
On January 5, 2010, Lugo filed a pro se § 2254 petition in the United States District Court for the Southern District of Florida, raising four grounds for relief. He also filed an appendix in support of his petition and a motion to hold the proceedings in abeyance. The petition asserted it was timely filed because it was filed within one year of February 10, 2009, the date *1205 the Florida Supreme Court’s mandate had issued in the decision affirming the denial of postconviction relief. Lugo’s abeyance motion specifically relied on Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, as one of the reasons his petition should be held in abeyance. It argued:
[T]he U.S. Supreme Court’s certiorari review of Holland v. State of Florida is likely to impact this case as to the failure of postconviction counsel to present issues and make filings within the time periods provided by law so as to preserve a capital defendant’s right to federal review of habeas corpus claims. There is a high likelihood that Mr. Lugo must have a viable federal petition pending to avail himself of any benefit from Holland.
The matter was referred to a magistrate judge who issued an order on January 19, 2010, informing Lugo that his “petition may be barred from consideration” unless he demonstrated that it was filed within one year from one of the four triggering events identified in 28 U.S.C. § 2244(d)(1). On the same date, the magistrate judge issued an order for the State to show cause why the petition should not be granted, specifically directing the State to address, among other things, “the issue of whether the limitations period established by 28 U.S.C. § 2244(d) has expired.”
Lugo’s pro se response to the magistrate judge’s order argued that his petition was timely filed for the reason he gave in his § 2254 petition, namely, that it was filed within one year of the issuance of the Florida Supreme Court’s mandate in Lugo II. Alternatively, Lugo asserted that “ ‘U.S.-State impediments’ prevented] [him] from timely filing a federal habeas corpus petition,” justifying consideration of his petition in light of § 2244(d)(1)(B). As an example of “U.S.-State impediments,” Lugo’s response identified, without meaningful explanation, “Federalized Anarchy in, so near, and thereafter Mr. Lugo’s direct appeal.”
On March 5, 2010, the State filed a 78-page response to the order to show cause which included a detailed procedural history of the case.[6] The State’s response contained several arguments why Lugo’s petition should be dismissed, including that it was time-barred by the statute of limitations. Specifically, the State argued that because Lugo did not file his Rule 3.851 motion until October 18, 2004, after the one-year statute of limitations had already expired, his state postconviction proceedings did not toll the federal statute of limitations. Asserting that more than one year of untolled time had passed before Lugo filed his § 2254 petition, the State argued that Lugo’s petition be dismissed. The State countered Lugo’s argument that he had one year from February 10, 2009— the date the Florida Supreme Court issued its mandate in Lugo II — by pointing out the United States Supreme Court’s holding that the judgment mentioned in 28 U.S.C. § 2244(d)(1)(A) refers to a state court conviction and sentence. See Burton v. Stewart, 549 U.S. 147, 156-57, 127 S.Ct. 793, 798-99, 166 L.Ed.2d 628 (2007).
Lugo, again acting pro se, filed a reply on April 5, 2010, to the State’s response to the order to show cause. In a section labeled “Statute of Limitations,” Lugo requested an evidentiary hearing to prove “U.S.-State impediments” justifying consideration of his petition despite the filing delay. Lugo also alleged that Wasson had retaliated against him for failing to give Wasson large sums of money. The retaliation, according to Lugo, consisted of al *1206 leged perjury and fraud in the reasons Wasson gave for not filing a state habeas petition on Lugo’s behalf.
D. Jeffrey E. Felier
After the pleadings were filed, the magistrate judge denied Lugo’s abeyance motion and sua sponte appointed attorney Jeffrey E. Felier to represent Lugo on April 20, 2010.[7] The order appointing Felier specifically directed him to file a status report addressing, among other things, “[wjhether this Petition is barred by the statute of limitations.” Felier filed a status report on June 16, 2010, but it did not address the statute of limitations issue. On December 20, 2010, Felier filed an amended § 2254 petition. Citing Holland, the petition itself alleged that “professional negligence and egregious conduct by CourL-Appointed Registry Counsel, Roy D. Wasson supports the need for equitable intervention by this Court.” Specifically, the amended petition said that Wasson “failed to present and argue mutually agreed upon causes during the course of his representation of [Lugo].” The amended petition also alleged in a conclusory fashion that Lugo was entitled to equitable tolling because he was acting diligently and extraordinary circumstances prevented him from filing his petition on time. See Holland, 560 U.S. at 649, 130 S.Ct. at 2562.
After further briefing and without an evidentiary hearing, the district court dismissed the amended petition as untimely.
E. Orlando do Campo
On July 27, 2011, Felier filed a timely notice of appeal from the dismissal of the amended federal habeas petition and a motion for the district court to appoint counsel for the appeal.[8] The court appointed attorney Orlando do Campo to represent Lugo and terminated Felier’s representation. On February 3, 2012, attorney do Campo filed a Rule 60(b) motion. The Rule 60(b) motion and its supporting documents brought to the district court’s attention, for the first time, specific and detailed information about Wasson’s conduct and Lugo’s troubled relationship with him. After briefing and without an evidentiary hearing, the district court denied the Rule 60(b) motion on June 12, 2012.
II. STANDARDS OF REVIEW
A. Dismissal of the § 2254 Petition
We review de novo a district court’s decision to dismiss a § 2254 petition and its decision to deny equitable tolling. San Martin, 633 F.3d at 1265. But we review the district court’s determination of the relevant facts, such as the petitioner’s diligence, only for clear error. Id. “Under this standard, we must affirm a district court’s findings of fact unless the record lacks substantial evidence to support them.” Id. (quotation marks omitted). We review the denial of an evidentiary hearing on equitable tolling only for an abuse of discretion. Chavez v. Sec’y Fla. Dep’t of Corr., 647 F.3d 1057, 1060 *1207 (11th Cir.2011). Thus, if we agree with the district court that the facts alleged in the habeas petition and other pleadings properly before the court are not enough to make Lugo’s petition timely under 28 U.S.C. § 2244(d), “then it was not an abuse of discretion for the district court to deny him an evidentiary hearing, and the court did not err by dismissing his petition.” Id.
B. Denial of the Rule 60(b) Motion
We review the denial of a Rule 60(b) motion only for an abuse of discretion. See Howell, 730 F.3d at 1260. Under this standard, we affirm unless we determine that the district court applied an incorrect legal standard, failed to follow proper procedures in making the relevant determination, or made findings of fact that are clearly erroneous. Mincey v. Head, 206 F.3d 1106, 1137 n. 69 (11th Cir.2000). A district court’s decision to grant or deny an evidentiary hearing in a Rule 60(b) proceeding is also reviewed only for an abuse of discretion. See Cano v. Baker, 435 F.3d 1337, 1342 (11th Cir. 2006) (per curiam); see also Schriro v. Landrigan, 550 U.S. 465, 473-75, 127 S.Ct. 1933, 1939-40, 167 L.Ed.2d 836 (2007).
III. DISCUSSION
A. Dismissal of the Petition as Untimely AEDPA imposes a one-year statute of limitations on the filing of § 2254 petitions. 28 U.S.C. § 2244(d)(1). The hmitations period begins to run from the latest of four different events, only one of which is relevant to Lugo’s case: “the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.” Id. § 2244(d)(1)(A).[9]
AEDPA’s one-year limitations period is subject to statutory tolling for “[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.” Id. § 2244(d)(2). Because AEDPA’s limitations period is not jurisdictional, it “is subject to equitable tolling in appropriate cases.” Holland, 560 U.S. at 645, 130 S.Ct. at 2560. A habeas petitioner “is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.” Id. at 649, 130 S.Ct. at 2562 (quotation marks omitted). “The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.” Id. at 653, 130 S.Ct. at 2565 (internal citation and quotation marks omitted).
The district court correctly determined that the state court judgment became final when the Supreme Court denied Lugo’s petition for a writ of certiorari *1208 on October 6, 2003. See Bond, 309 F.3d at 772-73. Lugo had until October 6, 2004, to file his § 2254 petition, absent statutory or equitable tolling. See Downs, 520 F.3d at 1318.
After “reviewing the arguments put forth in [Lugo’s] Reply and after considering all the pleadings and applicable law,” the district court concluded that it had “no alternative but to find the petition time barred.” As the district court correctly noted, “[t]he statutory tolling provision does not encompass a period of time in which a state prisoner does not have a ‘properly filed’ post-conviction application actually pending in state court.” Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003). Lugo’s Rule 3.851 motion was not “actually pending” in state court until October 18, 2004 — twelve days after the one-year limitations period expired. The filing of Lugo’s Rule 3.851 motion did not operate to toll the limitations period under § 2244(d)(2) because no period remained to be tolled. See Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir.2001).
Nor was Lugo entitled to equitable tolling. When the district court initially dismissed the federal habeas petition as time-barred on July 13, 2011, it expressly considered Lugo’s counseled reply to the State’s arguments that the petition was untimely. The court explained why Lugo had not shown the existence of extraordinary circumstances that prevented him from timely filing his § 2254 petition:
Mr. Lugo does not show a causal connection between the alleged extraordinary circumstances and the late filing of the petition. Indeed, the closest he ever comes to even making this argument is when he argues that “equitable intervention is warranted as a result of the professional negligence and egregious conduct of Courb-Appointed Registry Counsel, Roy D. Wasson, with regard to his failure to raise an agreed upon good cause of United States and State of Florida collusion so as to alerted [sic] the Court that the misconduct of the Government and State Attorneys hindered his ability to timely recognize and raise all viable and fundamental errors in his Original Motion for Post-Conviction Relief under Florida Rule of Criminal Procedure 3.851 before the expiration of the one year time limit.” ([D.E. 59] at 16).
Mr. Lugo has not shown how “some extraordinary circumstance stood in his way and prevented timely filing.” Holland, 130 S.Ct. at 2562 (internal quotation marks omitted). Most importantly, Mr. Lugo has not begun to explain how the “Federalized Anarchy” or his counsel’s failure to raise “an agreed upon good cause” ultimately caused the late filing of his federal habeas petition. Mr. Lugo also fails to explain why he did not have ample time to perfect the filing of his state post-conviction motion, leaving himself no time to ultimately file his federal petition[,] [n]or has he given any coherent explanation for his delay in filing in state court. Based on his assertions, it would appear that Mr. Lugo’s argument should have been made as one of an impediment by State action pursuant to 28 U.S.C. § 2244(d)(1)(B). However, the Court finds that any claim of State impediment is similarly vacant.
... Assuming that the Court found that such an impediment existed, Mr. Lugo has offered no cogent explanation as to how the “Federalized Anarchy” impeded his ability to timely file his petition.
The district court also quoted Lugo’s pro se definition of “Federalized Anarchy”:
Federalized Anarchy: this refers to the United States and State continuing anarchy of U.S.-State Collusion and its incorporation of Brady Evidence of June *1209 22, 1995 from state criminal trial and into and thru actions taken by the United States and State thereafter termination of criminal proceedings of motion for new trial on January 11, 1999. As these actions involved federal courts of 99-0418, 99-2419, and 99-1638, it federalized the collective anarchy of U.S.State Collusion; ...
We agree with the district court’s assessment that this definition “does not assist the Court in understanding why Lugo failed to timely file his federal petition, nor does it explain why Lugo would be entitled to equitable tolling.”
The district court correctly concluded that Lugo failed to establish “that some extraordinary circumstance stood in his way and prevented timely filing.” Holland, 560 U.S. at 649, 130 S.Ct. at 2562 (quotation marks omitted). It is well settled that “[t]he burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner.” San Martin, 633 F.3d at 1268. A petitioner “must plead or proffer enough facts that, if true, would justify an evidentiary hearing on the issue.” Hutchinson v. Florida, 677 F.3d 1097, 1099 (11th Cir.2012). “And the allegations supporting equitable tolling must be specific and not conclusory.” Id. In light of the petitioner’s burden, district courts are not “required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface.” Chavez, 647 F.3d at 1061. That is especially true in a case, like this one, with a massive record.
Nearly all of Lugo’s allegations and arguments in the district court that extraordinary circumstances existed were conclusory, tangential, irrelevant, or some combination of the three. It is not enough for a habeas petitioner, who had the benefit of appointed counsel in federal court, to allege in general and conclusory terms that the appointed lawyers who represented him in earlier proceedings acted negligently or engaged in misconduct. And vague allegations about the existence of impediments, without more, or an argument that fails to explain how such impediments prevented the timely filing of the petition, does not establish extraordinary circumstances. Nor are they sufficient to warrant an evidentiary hearing. Id. at 1060. On this record, we cannot say the district court erred in concluding that Lugo failed to establish extraordinary circumstances sufficient to support equitable tolling, or that the court abused its discretion in not granting him an evidentiary hearing.
Even if we concluded that Lugo had shown extraordinary circumstances that prevented him from filing his petition on time, we must defer to the district court’s finding of fact that Lugo did not act with due diligence in pursuing his rights, unless it is clearly erroneous. See San Martin, 633 F.3d at 1265. The district court found that Lugo had failed to articulate how he acted with diligence, and instead had simply cited to “several of the documents attached in the Appendix. (See Appendix C-R, dd-kk).” After reviewing the appendix items cited by Lugo, the court “found that all of the documents purporting to show diligence that could entitle Mr. Lugo to equitable tolling of the statute of limitations were filed well after the statute of limitations had already expired and were not documents regarding a federal habeas petition or the filing thereof.”
We have independently reviewed the documents Lugo cited to the district court. With the exception of an email dated October 31,1996 (which does not remotely have anything to do with Lugo’s diligence or lack of it), all of the documents he cited appear to involve matters from various *1210 state and federal court proceedings that were filed after the one-year limitations period expired on October 6, 2004. They are not probative of Lugo’s diligence during the relevant time period before the limitations period expired. Thus, we cannot say the district court’s finding with respect to diligence “lacks substantial evidence to support [it].” Id. (quotation marks omitted). It is not clearly erroneous.[10]
B. Denial of the Rule 60(b) Motion
Rule 60(b)(6), the catchall provision of Rule 60(b), authorizes relief for “any other reason that justifies relief’ from the operation of a judgment. Fed. R.Civ.P. 60(b)(6). In Gonzalez v. Crosby, the Supreme Court recognized that “Rule 60(b) has an unquestionably valid role to play in habeas cases.” 545 U.S. 524, 534, 125 S.Ct. 2641, 2649, 162 L.Ed.2d 480 (2005). Where a Rule 60(b) motion challenges only a district court’s prior ruling that a habeas petition was time-barred, it “is not the equivalent of a successive habeas petition.” Id. at 535-36, 125 S.Ct. at 2650. However, “a movant seeking relief under Rule 60(b)(6) [must] show extraordinary circumstances justifying the reopening of a final judgment.” Id. at 535, 125 S.Ct. at 2649 (quotation marks omitted); see also Cano, 435 F.3d at 1342. And “[s]uch circumstances will rarely occur in the habeas context.” Gonzalez, 545 U.S. at 535, 125 S.Ct. at 2649. Even where the Rule 60(b) motion demonstrates sufficiently extraordinary circumstances, “whether to grant the requested relief is ... a matter for the district court’s sound discretion.” Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1317 (11th Cir.2000) (quotation marks and alteration omitted).
As a threshold matter, the district court indicated that to satisfy Rule 60(b)’s extraordinary circumstances requirement, Lugo would have to satisfy the criteria for granting a Rule 60(b) motion and demonstrate that he is entitled to equitable tolling under Holland.[11] In doing so, the court took into consideration specific facts and legal arguments based on those facts put forward by do Campo, the attorney who had been appointed to represent Lugo after the district court dismissed the habeas petition. Some of those facts were already in the voluminous record before the district court at the time it dismissed the federal petition. Others were not. For example, there was certain correspondence *1211 between Lugo and Wasson before and after the expiration of Lugo’s statute of limitations on October 6, 2013, that had not been before the court when it dismissed the petition.
Lugo’s Rule 60(b) motion and supporting documentation led the district court to find that Wasson’s conduct was “nothing short of egregious,” “beyond the pale,” “exceptional,” “extraordinary,” and “serious and disturbing.” The court summarized Wasson’s conduct, as alleged by Lugo, as follows:
It appears that while Mr. Wasson was representing Mr. Lugo, pursuant to a court-appointment, Mr. Wasson also prepared and executed a Trust Agreement wherein Mr. Lugo would deposit $1.5 million into an interest bearing account for the benefit of his children. Mr. Wasson was designated as the trustee. For his services as trustee, Mr. Wasson was to be paid a $100,000 administration fee and he was to be reimbursed for “reasonable out-of-pocket expenses incurred in carrying out the purposes of this Trust.” Further, also during his court appointment, Mr. Was-son drafted and executed a Conditional Retainer Agreement with Mr. Lugo. Under the terms of the Agreement, Mr. Wasson acknowledged that he was “legally and ethically prohibited from seeking or accepting additional compensation for services performed in that 3.851 proceeding” but that Mr. Lugo “wishes to retain the Attorney now to represent him in the future in other matters.” For Mr. Wasson’s future services, he was to be compensated by either: 1) a lump sum payment in the amount of $500,000 or 2) by an interest-free signature loan in the principal amount of $1 million to a corporate entity designated by the Attorney.
Over the years that follow, it becomes obvious that Mr. Lugo may not have made good on his promises to Mr. Was-son. Mr. Wasson’s subsequent letters remind Mr. Lugo that he remains able to reliably perform trustee duties and inquires where things stand “regarding helping [Lugo’s] children.” Despite non-compliance with the Trust Agreement and Conditional Retainer Agreement, Mr. Wasson, still court-appointed counsel, approached Mr. Lugo with certain new “investment opportunities.” In particular, Mr. Wasson suggested that Mr. Lugo should invest $100,000 in a company owned and operated by Mr. Wasson. Mr. Wasson provided Mr. Lugo with the Articles of Incorporation and instructed him that payment should not be delayed by such minor issues like the proper payee because Mr. Lugo could just send the check made to Mr. Wasson’s trust account at Wasson & Associates.
By September 7, 2006, the relationship seems to have soured. On that day, Mr. Wasson wrote Mr. Lugo a letter advising him that “I could begin to prepare now for the briefing and argument of these issues which require a new case filing at the federal level. Unfortunately, given my work load in other matters (including matters pertaining to the well being of your children), I am unable to spend all the time I would like to on your case because of lack of compensation provided to me for such services.”
Doc. 101 at 8-10 (internal citations omitted). Despite finding that Wasson’s conduct was “certainly exceptional,” “extraordinary,” and “beyond the pale,” the district court concluded that “it did not change the result here” because all of that conduct “occurred during the time period in which the AEDPA statute of limitations was already tolled,” between October 6, 2004, and February 10, 2010.
*1212 In reaching its conclusion on equitable tolling, the district court considered three distinct periods of legal representation of Lugo: (1) October 6, 2003, to January 15, 2004 (representation by CCRC-Middle Region); [12] (2) January 16, 2004, to October 18, 2004 (representation by Wasson preRule 3.851 filing); and (3) February 10, 2009, to January 5, 2010 (representation by Wasson after issuance of the Florida Supreme Court’s mandate). The only period for which the court found Lugo had demonstrated both extraordinary circumstances and diligence was October 6 to 18, 2004.
The district court justified equitable tolling during that twelve-day period on two facts: (1) Lugo had written Wasson several times about his AEDPA one-year deadline expiring on October 6, 2004, asking him to file his Rule 3.851 motion no later than that date; and (2) on October 6, 2004, Wasson filed a motion for clarification of hurricane tolling orders and a motion for a ten-day enlargement of the time to file Lugo’s Rule 3.851 motion, which was granted by the Florida Supreme Court. While the district court acknowledged that normally requests for extensions in state court, and even state court orders granting them, do not toll AEDPA’s statutory limitations period, see Howell v. Crosby, 415 F.3d 1250, 1251 (11th Cir.2005), it concluded some equitable tolling was warranted in light of Lugo’s “multiple written requests for his Rule 3.851 motion to be filed on October 6, 2004, in combination with the hurricanes in South Florida in 2004.”
As to all other relevant time periods, the district court found that Lugo had failed to demonstrate that extraordinary circumstances prevented him from timely filing his federal petition or that he had diligently pursued his rights. Based upon our review of all the facts and circumstances that were brought to the district court’s attention in the Rule 60(b) proceeding, we affirm these district court findings because we cannot fairly say “the record lacks substantial evidence to support them.” San Martin, 633 F.3d at 1265 (quotation marks omitted).
Beyond that, we stress that we review the district court’s decision denying a Rule 60(b) only for an abuse of discretion. “It is not an abuse of discretion for the district court to deny a motion under Rule 60(b) when that motion is premised upon an argument that the movant could have, but did not, advance before the district court entered judgment.” Maradiaga v. United States, 679 F.3d 1286, 1294 (11th Cir.2012).
Our decision that Lugo is not entitled to equitable tolling of AEDPA’s one-year statutory deadline for seeking federal habeas relief disposes of this appeal. We write more here in response to our colleague’s concurring opinion regarding the problem in Florida of state death-row inmates missing the AEDPA filing deadline despite the provision of state collateral counsel in every case. As the data our colleague has assembled shows, at least 34 death-row inmates in Florida, of which *1213 there are currently 397, have failed to meet the federal filing deadline in the eighteen years since AEDPA became effective in 1996. We agree with her that this number, which accounts for roughly 8% of Florida’s current death-row population, is cause for concern about the quality of capital collateral representation in some Florida cases. The problem, for reasons largely unknown, appears to be of relatively recent vintage. As the appendix to the concurring opinion shows, the earliest decision finding a missed statute-of-limitations deadline in a Florida capital case is 2004, which is eight years after AEDPA’s enactment.[13] An even more striking fact is that the problem largely is a Florida one. Our own research indicates, for example, that during the eighteen-year period since AEDPA’s enactment only one death-row inmate in Georgia has missed the statute-of-limitations deadline.[14] Georgia currently has 85 death-row inmates, so that is roughly 1%.[15]
We also agree with the concurring opinion that indigent state capital inmates are entitled to the appointment of federally funded counsel to assist them in the preparation and filing of a § 2254 federal habeas petition, perhaps even before they have sought state collateral relief. See 18 U.S.C. § 3599(a)(2); McFarland v. Scott, 512 U.S. 849, 855-56, 114 S.Ct. 2568, 2572, 129 L.Ed.2d 666 (1994) (holding that the right to appointed counsel in federal habeas proceedings “adheres prior to the filing of a formal, legally sufficient habeas corpus petition” because it “includes a right to legal assistance in the preparation of a habeas corpus application”). We emphasize, however, that a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the pursuit and exhaustion of his' state postconviction remedies, including the filings of motions for state collateral relief that would toll the one-year federal filing period. See Harbison v. Bell, 556 U.S. 180, 189, 129 S.Ct. 1481, 1488, 173 L.Ed.2d 347 (2009) (emphasizing that § 3599 does not “require federally funded counsel to represent her client in any state habeas proceeding occurring after her appointment”); Gary v. Warden, Ga. Diagnostic Prison, 686 F.3d 1261, 1274 (11th Cir.2012) (“[A]n indigent prisoner ... may receive § 3599 funding only for those proceedings that ordinarily occur subsequent to [the filing of a § 2254 petition].”); King v. Moore, 312 F.3d 1365, 1368 (11th Cir.2002) (holding, post-McFarland, that a state prisoner is not entitled to federally paid counsel for the purpose of pursuing state postconviction remedies); In re Lindsey, *1214 875 F.2d 1502, 1506 (11th Cir.1989) (holding, pre-McFarland, that the right to federally appointed counsel does not encompass “any proceedings convened under the authority of a State”).
And while a district court is not wholly bereft of discretion in this area, we believe that it would be an abuse of that discretion for a district court to appoint federal habeas counsel to assist a state prisoner in exhausting his state postconviction remedies before a formal § 2254 petition has been filed and, even then, only where the petitioner is unable to obtain adequate legal representation in state court. See Harbison, 556 U.S. at 189-90 & n. 7, 129 S.Ct. at 1488-89 & n. 7 (explaining that “a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation,” yet emphasizing that § 3599 “provides for counsel only when a state petitioner is unable to obtain adequate representation,” meaning that the provision of “state-furnished representation renders him ineligible for § 3599 counsel until the commencement of [] § 2254 proceedings”) (emphasis added); Gore v. Crews, 720 F.3d 811, 814 n. 1 (11th Cir.2013) (stating in dicta that if a petitioner’s “state court counsel is not providing representation adequate to exhaust his state court remedies, ... a district court could determine, in its discretion, that it is necessary for court-appointed counsel to exhaust a claim in state court in the course of her federal habeas representation....”) (quotation marks omitted); see also Irick v. Bell, 636 F.3d 289, 292 (6th Cir.2011) (“[E]ven if § 3599 would otherwise apply to Irick’s state post-conviction proceedings, he would not be eligible for federal funding because state law affords him ‘adequate representation.’ ”) (quoting Harbison, 556 U.S. at 189, 129 S.Ct. at 1488).
This all makes good sense. To mandate the provision of federally funded counsel to assist a state prisoner in his pursuit of state postconviction remedies not only “would increase the cost of implementing [§ 3599] enormously,” Sterling v. Scott, 57 F.3d 451, 457 (5th Cir.1995), but also “would have the practical effect of supplanting state-court systems for the appointment of counsel in collateral review cases,” In re Lindsey, 875 F.2d at 1506. It is unlikely that Congress intended either of these results when it authorized the appointment of federal counsel to aid state capital prisoners in seeking federal habeas relief in federal court. See King, 312 F.3d at 1368 (noting that it is “unlikely” that Congress intended “to provide counsel, at federal expense, to state prisoners engaged in state proceedings”).
We are also skeptical that filings of anticipatory, shell, or placeholder § 2254 petitions while state prisoners exhaust their state collateral remedies will significantly mitigate the problem of missed AEDPA deadlines among Florida inmates. District courts are not required to accept such filings and stay the federal habeas proceedings, possibly for years, while a state prisoner completes his state collateral proceedings. To the contrary, the Supreme Court has held that, except in limited circumstances, district courts must dismiss § 2254 petitions without prejudice until the petitioner has fully exhausted his state postconviction remedies with respect to each of his asserted claims for relief. See Rose v. Lundy, 455 U.S. 509, 519-20, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982) (holding that district courts ordinarily must dismiss a § 2254 petition without prejudice if the petitioner has not exhausted his state postconviction remedies); Rhines v. Weber, 544 U.S. 269, 275-79, 125 S.Ct. 1528, 1534-36, 161 L.Ed.2d 440 (2005) (holding that district courts may employ a “stay-and-abeyance” procedure *1215 in “limited circumstances” where there is good cause for the petitioner’s failure to first exhaust all of his claims in state court, the unexhausted claims are not plainly meritless, and there is no indication that the petitioner engaged in deliberately dilatory tactics).
Perhaps a better method for combating the problem of missed AEDPA deadlines among Florida death-row inmates is to establish a capital habeas unit (CHU) in one or more of Florida’s three federal districts, which could track capital cases in that state to ensure that the claims of death-row inmates are timely presented in both state and federal court. Currently, seventeen federal defender organizations across the country, operating in twelve states, have CHUs focused exclusively on capital habeas litigation in their respective jurisdictions and staffed by knowledgeable people trained in the complexities of such litigation. There are two CHUs now operating in this Circuit — one in the Middle District of Alabama, which helps to provide capital habeas representation in all three of Aabama’s federal districts, and one in the Northern District of Georgia, which helps handle the capital case federal habeas litigation in that district. Athough causation can be tricky phenomenon to pinpoint, we believe that it is no coincidence that the number of untimely § 2254 petitions in Georgia, which has had a CHU since AEDPA’s statute of limitations was enacted in 1996, is dramatically lower'than it is Florida, which has never had a CHU in any of its three federal districts. Among other things, the CHU in the Northern District of Georgia, working in conjunction with the Georgia Resource Center and others, tracks capital cases in that state and helps ensure that there are no missed filing deadlines.
The same could be done in Florida. Establishing a CHU in one of that state’s three federal districts would have several benefits. Not only could it provide direct representation to capital inmates in some federal habeas proceedings, thus minimizing the need for court-appointed counsel, but it could also provide critical assistance and training to private registry counsel who handle state capital cases in Florida’s collateral proceedings. A CHU could also monitor and track capital cases in Florida to help prevent AEDPA’s one-year limitations period from lapsing before a formal federal habeas petition has been filed. This Court is currently considering the administrative question of whether to authorize the creation of a CHU in the Northern District of Florida, like the one in the State of Georgia that has operated so effectively in tracking capital cases in that state to ensure that the claims of death-row inmates are timely presented and not barred by the federal 'statute of limitations.
IV. CONCLUSION
For the reasons outlined in this opinion, we conclude the district court properly dismissed Lugo’s federal habeas corpus petition as time-barred, even without holding an evidentiary hearing. We also conclude the district court did not abuse its discretion when it denied Lugo’s Rule 60(b) motion. We therefore affirm each of the district court’s judgments in this consolidated appeal.
AFFIRMED.

. In total, Lugo was convicted on all of the thirty-nine counts charged against him, which were:
[F]irst-degree murder (two counts), conspiracy to commit racketeering, racketeering, kidnaping (two counts), armed kidnaping, attempted extortion, grand theft (three counts), attempted first-degree murder, armed robbery, burglary of a dwelling, first degree arson, armed extortion, money laundering (nine counts), forgery (six counts), uttering a forged instrument (six counts), possession of a removed identification plate, and conspiracy to commit a first degree felony.
Lugo I, 845 So.2d at 91 n. 30.

. Under Florida Rule of Criminal Procedure 3.851(b)(1), the Florida Supreme Court, upon issuance of its mandate affirming a sentence of death, issues "an order appointing the appropriate office of the Capital Collateral Regional Counsel or directing the trial court to immediately appoint counsel from the Registry of Attorneys maintained by the Justice Administrative Commission.” Since 1997, there have been three CCRC regional offices — Northern, Middle and Southern. See Am. Bar Ass’n, Evaluating Fairness and Accuracy in State Death Penalty Systems: The Florida Death Penalty Assessment Report 235 (2006) (2006 ABA Report), available at http:// www.americanbar.org/groups/individual_ rights/projects/death_penalty_due_process_ review_project/death_penalty_assessments/ florida.html; see also Fla. Stat. § 27.701. Each CCRC office is responsible for representing persons convicted and sentenced to death by state courts, within their respective regions, in collateral proceedings in state and federal court. See Fla. Stat. § 27.702(l)-(2). On July 1, 2003, however, CCRC-Northern was closed by the Florida legislature as part of a pilot program, and its responsibilities were transferred to a panel of registry attorneys, compiled and maintained by the Florida Commission on Capital Cases. Am. Bar Ass'n, supra, at 235. More recently, the Florida legislature enacted the Timely Justice Act of 2013, effective July 1, 2013, which, among other things, reopened the CCRC-Northern office. See 2013 Fla. Sess. Law Serv. *1203 Ch.2013-216 (West) (codified in scattered sections of the Fla.Code).

. Lugo argued in the district court that he was not given timely notice of CCRC-Middle Region’s motion to withdraw and was not present at the proceedings removing CCRCMiddle Region as counsel. He does acknowledge that CCRC-Middle Region advised him that a conflict existed related to the investigation. Lugo says that had he been timely served with notice of CCRC-Middle Region’s motion to withdraw, he would have objected and waived any alleged conflict.

. The district court's decision on equitable tolling is reviewed de novo, San Martin v. McNeil, 633 F.3d 1257, 1265 (11th Cir.2011), but its decision denying the Rule 60(b) motion is reviewed only for an abuse of discretion, Howell v. Secy, Fla. Dep’t of Corr., 730 F.3d 1257, 1260 (11th Cir.2013).

.Under Florida law, a capital habeas petitioner may file a petition for a writ of habeas corpus in the Florida Supreme Court, but such a petition must be filed at the same time as the initial brief is filed in an appeal of a state circuit court’s order on a Rule 3.851 motion. See Fla. R.Crim. P. 3.851(d)(3). In Florida, a state habeas petition is the proper procedural vehicle for bringing claims of ineffective assistance of appellate counsel, for example, but not for raising claims that should have been brought on direct appeal or in a *1204 postconviction motion. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000).

. On March 8, 2010, the State filed a notice of conventional filing of the state court record, which consisted of 167 volumes of state court records and pleadings. The State also filed the record electronically in 474 separate appendices.

. Wasson never filed a notice of appearance or any pleadings in federal court on Lugo's behalf, despite his statutory, contractual, and ethical obligations to continue his representation into federal court. We were advised during oral argument that the Florida Supreme Court has yet to allow Wasson to withdraw from representing Lugo.

. On August 8, 2011, Lugo filed a pro se motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), which the district court denied as untimely. We do not review the district court's denial of the Rule 59(e) motion because it is beyond the scope of the COA in this case. See Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir.1998) (per curiam) (explaining that our appellate review is limited to the issues specified in the COA).

. We recognize that Lugo's pleadings in the district court alleged that “U.S.-State impediments prevented] Lugo from timely filing a federal habeas corpus petition.” If proven, an allegation like that could provide a different triggering date for the application of AED-PA’s one-year deadline. See 28 U.S.C. § 2244(d)(1)(B) (providing an alternative limitations trigger running from “the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action”). Lugo never developed the factual or legal basis for this ground in the district court. We also consider the issue abandoned because he did not argue it in his brief to this Court. See Isaacs v. Head, 300 F.3d 1232, 1238 (11th Cir.2002); Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995). In any event, controlling precedent forecloses Lugo’s position. See Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005), aff'd, 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (holding that providing an incompetent postconviction attorney "is not the type of State impediment envisioned by § 2244(d)(1)(B)”).

. In Cadet v. Florida Department of Corrections, 742 F.3d 473, 481 (11th Cir.2014), which was decided during the pendency of this appeal, we held that the proper standard for gauging whether attorney misconduct qualifies as an extraordinary circumstance for equitable tolling purposes is whether it amounts to abandonment of the attorney-client relationship, not whether it is negligence or even gross negligence. Because Lugo has failed to demonstrate due diligence in pursuing his rights or a causal connection between counsel’s alleged misconduct and the untimely filing of his § 2254 petition, we need not address Cadet’s application to this case or decide whether counsel’s alleged errors rose to the level of abandonment.

. For the purposes of this appeal, we assume, without deciding, that Lugo's Rule 60(b) motion was a true 60(b) motion within the meaning of Gonzalez — that is to say, it attacked "not the substance of the federal court’s resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings.” 545 U.S. at 532 & n. 4, 125 S.Ct. at 2648 & n. 4 (explaining that a habeas petitioner who "asserts that a previous ruling which precluded a merits determination was in error — for example, a denial for such reasons as ... [a] statute-of-limitations bar” is not "making a habeas claim”). But see id. at 532 n. 5, 125 S.Ct. at 2648 n. 5 ("We note that an attack based on the movant's own conduct, or his habeas counsel’s omissions, ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably.”) (internal citation omitted).

. We note that the district court’s order indicated that Lugo was represented by CCRCSouthern Region on October 6, 2003, and that CCRC-Middle Region was appointed to represent Lugo after CCRC-Southern Region moved to withdraw because of a conflict. While it is true that CCRC-Middle Region was appointed to represent Lugo after CCRCSouthern Region withdrew, our review of the record indicates that CCRC-Middle Region filed its notice of appearance in state court on June 9, 2003. In other words, CCRC-Middle Region represented Lugo on October 6, 2003, not CCRC-Southern Region. In any event, this discrepancy is not material and does not otherwise undermine the district court’s finding that "Mr. Lugo has not established diligence or an extraordinary circumstance during his representation by CCRC.”

. In Wilcox v. Florida Department of Corrections, 158 F.3d 1209, 1211 (11th Cir. 1998), we held that for all of those prisoners who had completed the direct appeal process before AEDPA, the one-year limitations period began running on the statute’s effective date, which was April 24, 1996.

. This number was derived from a Westlaw search for Georgia capital cases since AED-PA's 1996 enactment where a § 2254 petition was deemed untimely. Although the cases in Westlaw may not reflect all of the death-row inmates who have missed AEDPA’s one-year deadline, there is no reason to believe that there are any more overlooked cases in Georgia than in Florida.

.We realize, of course, that the inmates on any given death row are at various stages of the long appeal and postconviction processes. As a result, taking the number of death-row inmates in a state who have missed the filing deadline over the years and dividing that number by the current population on death row in that state does not yield the actual percentage of cases that reach the federal habeas stage in which the filing deadline has been missed. It is only a way of compensating for the fact that the number of inmates on Florida's death row is about four times the number of Georgia's.