[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

Nos. 21-11472, 21-13569

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WESLEY ADAM KROLL,
Individually and
d.b.a. United Tax Service,
d.b.a. American Tax Service,
d.b.a. Tax Stop,
d.b.a. Tax South,

Defendant-Appellant.

———————————

Appeals from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:20-cv-00028-CDL

———————————

Before JORDAN, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

Former federal tax return preparer Wesley Kroll appeals the district court's denial of his motion for relief from partial default judgment under Federal Rule of Civil Procedure 60(b).  We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 12, 2020, the Government sued Kroll and his tax return preparation businesses for permanent injunctive relief and disgorgement under 26 U.S.C. sections 7402, 7407, and 7408. The Government alleged that Kroll acquired "ill-gotten gains" from the "preparation and filing of customer tax returns that claimed improper tax refunds, understated customers' federal tax liabilities, or otherwise included false or fraudulent claims."  And the Government supported its allegations with details about eight unnamed customers whose federal income tax returns Kroll prepared for multiple tax years at a store in Georgia.  The Government also alleged that "Kroll reside[d] in Midland, Georgia."

Until the "end of March" or "beginning of April" 2020, Kroll worked as the manager and sole employee of one of his Georgia tax return preparation businesses. On March 4, 2020, he was served at work with the summons and complaint in this action. The same day, he contacted an attorney, who declined to represent him but advised that the complaint was "very serious" and "could have serious implications, both civil and criminal," and that it was "very important" for Kroll to "hire an attorney" and "answer the complaint timely."

On March 25, 2020, Kroll's deadline for responding to the complaint expired. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). At that point, Kroll had not appeared in the case. Five days later, at the Government's application, the clerk entered default against him.

On April 20, 2020, the Government moved for a partial default judgment for permanent injunctive relief. The same day, Kroll appeared pro se and filed a three-sentence motion for extension of time. The COVID-19 pandemic and a related "stay in place order," he said, had caused him to "hav[e] a very difficult time obtaining legal [counsel]," despite his "hav[ing] contacted many law firms." The motion didn't specify how long of an extension Kroll wanted and it gave an Alabama address for Kroll.

Three days later, the district court granted Kroll's motion and afforded him over a month—until June 1, 2020—to respond to the Government's motion and to move to set aside the clerk's default. The district court warned that Kroll's "[f]ailure to file a

response by that date w[ould] result in partial default judgment be-ing entered against [him]."

On May 24, 2020, a month after he received the extension and a week before the June 1 deadline, Kroll began experiencing COVID-19 symptoms.  He was bedridden for ten days.  "[W]ithin a day or so" after Kroll got sick, his teenage stepson also contracted COVID-19, experiencing symptoms less severe than Kroll's.  The June 1 deadline passed while Kroll was sick.

On June 10, 2020, the Government renewed its motion for partial default judgment.  Under the local rules, Kroll had until July 1, 2020, to respond to the renewed motion.  *See* M.D. Ga. Loc. R. 7.2 ("A party desiring to submit a response, brief, or affidavits shall serve the same within twenty-one (21) days after service of mo-vant's motion and brief.").  Kroll didn't meet this deadline.  In fact, Kroll's next filing didn't occur until September 18, 2020, when legal counsel appeared on his behalf.

On August 20, 2020, the district court granted the Govern-ment's motion and entered a permanent injunction broadly pro-hibiting Kroll from operating a tax return preparation business.  Over a month later, on October 1, Kroll moved for relief from judg-ment under rule 60(b) and for leave to file an answer.  Kroll sought relief based on "excusable neglect" under rule 60(b)(1) and the "other reason" provision in rule 60(b)(6), and he argued that he failed to answer the complaint because of the COVID-19 pandemic generally and its effects on his health and his family specifically.  Along with the rule 60(b) motion, Kroll submitted a proposed

answer and a short affidavit.  The proposed answer briefly raised two affirmative defenses (failure to state a claim and estoppel) and largely denied (or neither admitted nor denied) the complaint's allegations.  It also alleged that "Kroll [wa]s a resident of Alabama" who owned only one tax return preparation business.  In the affidavit, Kroll "declare[d] under the penalty of perjury" that the pandemic made him "unable to locate" "an attorney who was competent to handle tax preparer litigation" in March 2020 and that he couldn't "find an attorney to handle the case" after he and his child got COVID-19 in May 2020.

After additional briefing, the district court denied Kroll's motion.  The district court construed the motion as arising under rule 60(b)(1), not rule 60(b)(6), and explained that, in any event, Kroll hadn't met the rule 60(b)(6) requirement of "showing that an extreme or unexpected hardship w[ould] result" unless the partial default judgment against him were set aside.  Kroll also hadn't shown excusable neglect under rule 60(b)(1), said the district court, because he didn't give "a good reason for his failure to respond to the Government's complaint or otherwise comply with the [district c]ourt's deadlines."  The district court explained that "[c]ontracting an illness in May d[id] not explain why [Kroll] failed to respond to the . . . complaint in March, let alone constitute a good reason for that failure," and that his "inability to obtain counsel in [the] civil action" wasn't a good reason for missing deadlines.

## STANDARD OF REVIEW

We review a district court's denial of a rule 60(b) motion "only for abuse of discretion." *Am. Bankers Ins. Co. v. Nw. Nat'l Ins. Co.*, 198 F.3d 1332, 1338 (11th Cir. 1999). "Under this standard, we affirm unless . . . the district court applied an incorrect legal standard, failed to follow proper procedures," made "clearly erroneous" factual findings, *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1207 (11th Cir. 2014), or "made a clear error of judgment," *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005); *accord Lambrix v. Sec'y, Fla. Dep't of Corr.*, 851 F.3d 1158, 1170 n.7 (11th Cir. 2017). The rule 60(b) appeal "is narrow in scope, addressing only the propriety of the denial." *Am. Bankers*, 198 F.3d at 1338. The appeal "does not raise issues in the underlying judgment for review." *Id.*

## DISCUSSION

Kroll appeals the denial of his motion for relief from the partial default judgment. He argues that because (1) his proposed answer raised a meritorious defense, (2) setting aside the judgment wouldn't prejudice the Government, and (3) the COVID-19 pandemic created extraordinary circumstances that prevented him from filing a timely answer, the district court abused its discretion in denying his rule 60(b) motion. We disagree.

"On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect" or

"(6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Rule 60(b)(1) and rule 60(b)(6) are "mutually exclusive." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993).

"Under [r]ule 60(b)(6), a party remains under a duty to take legal steps to protect his own interests." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1357–58 (11th Cir. 2014) (alteration adopted and quotation omitted). "To justify relief under [rule 60(b)(6)], a party must show extraordinary circumstances suggesting that the party is faultless in the delay." *Pioneer Inv. Servs.*, 507 U.S. at 393 (quotation omitted). "If a party is partly to blame for the delay, relief must be sought within one year under [rule 60(b)(1)] and the party's neglect must be excusable." *Id.*

It took seven months after Kroll was served with the complaint for him to propose an answer to it. As much as Kroll wants to blame the pandemic for this delay, he wasn't "faultless." *Pioneer Inv. Servs.*, 507 U.S. at 393. He knew how to represent himself in the action: he did so when he filed the motion for extension of time, which the district court granted. Kroll explains why he *wanted* a lawyer: lawyers seem "magical," being sued is "terrifying," legal terms like "disgorgement" may as well be "Greek," and he was "caught in the crosshairs of a complaint he did not understand with the most powerful opponent in the history of the world"—the United States Government. But Kroll doesn't adequately explain why he *couldn't* have acted pro se to respond to the default judgment motion, move to set aside the default, ask for

another extension, or file an answer. Instead, he did none of those things; he waited until after the district court granted the Government's motion to argue his case and "take legal steps to protect his own interests." *Aldana*, 741 F.3d at 1357–58.

Even if Kroll couldn't have represented himself when he was bedridden from COVID-19, he didn't get sick until May 24, 2020. A whole month earlier, on April 23, the district court had afforded him an extension. That the district court gave him until June 1 at the latest to oppose the default judgment motion didn't mean that he should have waited until June 1 to do so—for the very reason that something could happen. Because Kroll was "partly to blame for the delay," he had to move for relief under rule 60(b)(1), not rule 60(b)(6). *Pioneer Inv. Servs.*, 507 U.S. at 393. Thus, the district court correctly construed his motion as arising under rule 60(b)(1).

"To establish mistake, inadvertence, or excusable neglect under [r]ule 60(b)(1), a defaulting party must show that: (1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *Valdez v. Feltman*, 328 F.3d 1291, 1295 (11th Cir. 2003) (quotation omitted). Even when "the prejudice in [a] case is not particularly pronounced," we will affirm when the moving party "fail[s] to make even the barest showing of a meritorious defense or to present a good reason for failing to respond to the complaint." *Id.* at 1297. "[A] moving party cannot satisfy the burden of showing a meritorious defense simply by asserting a general

denial," *id.* at 1296 (quotation omitted), but "must make an affirmative showing of a defense that is likely to be successful," *id.* (quotation omitted). The moving party must offer specific explanations, not just denials at the "highest order of abstraction." *Id.*

Kroll failed to establish a good reason or a meritorious defense. First, even considering the pandemic, Kroll had ample time to either represent himself or obtain legal counsel and meet the district court's deadlines. Kroll and his stepson didn't get COVID-19 until two months after the initial deadline for responding to the complaint had expired.

Second, Kroll failed to show a meritorious defense. Kroll argues that his proposed answer "la[id] out a considerable number of inaccuracies posed within the complaint" and thus showed that "[t]he Government did not thoroughly research its claims before bringing this action." As examples of inaccuracies, Kroll points to the complaint's allegations that he lived in Georgia and owned multiple businesses, when in fact (he says), he was "a citizen of Alabama at all times relevant" and didn't "own any of the entities listed in this action." He also criticizes the anonymity of the customers listed in the complaint, which made it "impossible to provide greater specifics as to his defense," and describes the case as "based largely around [one] disgruntled customer." But Kroll's arguments rest on general denials that fail to make a specific showing of a meritorious defense. *Id.* at 1296–97. Thus, he didn't satisfy his burden. *Id.*

About the lack of prejudice, Kroll contends that the Government "can afford to handle one more litigation without going bankrupt" and "enjoys the possible remedy of preliminary, continuing, injunction to bar [him] from preparing tax returns." But even if "the prejudice in this case is not particularly pronounced," Kroll didn't "make even the barest showing of a meritorious defense or . . . present a good reason for failing to respond to the complaint." *Id.* at 1297. Thus, the district court didn't abuse its discretion in denying his rule 60(b) motion, and we affirm.

**AFFIRMED.**