**Wayne E. RITTER,**
**Petitioner-Appellant,**

v.

**Fred SMITH, Commissioner, Alabama Department of Corrections; and J.D. White, Warden, Holman Unit, Respondents-Appellees.**

Nos. 83–7486 & 86–7235.

United States Court of Appeals,
Eleventh Circuit.

Feb. 18, 1987.

Rehearing and Rehearing En Banc
Denied April 13, 1987.

Ira A. Burnim, Morris S. Dees, J. Richard Cohen, Montgomery, Ala., for petitioner-appellant in No. 83–7486.

Ed Carnes, Asst. Atty. Gen., Charles A. Graddick, Atty. Gen., Montgomery, Ala., for respondents-appellees in No. 83–7486.

Morris S. Dees, J. Richard Cohen, Montgomery, Ala., for petitioner-appellant in No. 86–7235.

Ed Carnes, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees in No. 86–7235.

Before RONEY, Chief Judge, JOHNSON and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

This death penalty case presents a rare set of circumstances involving the state's attempt to reinstate a death sentence following a Supreme Court decision in a related case. The only issues facing us on appeal are procedural in nature, and thus there is no need to discuss the underlying facts of the defendant's crime or his trial.[1]

## I. BACKGROUND

Defendant Wayne Eugene Ritter, along with his accomplice John Louis Evans, III,[2] was convicted on April 26, 1977 of the murder of pawn shop operator Edward Nassar. As required by the then-operative Alabama statute,[3] the jury that convicted Ritter and Evans returned a mandatory recommendation of a death sentence for each man. The trial judge then heard evidence of aggravating and mitigating circumstances, as was also required by the statute. Following this hearing, the trial judge accepted the jury's verdict and sentenced the defendants to death.

Defendant Ritter's case reached us for the first time as a challenge to the constitutionality of the Alabama statute. In *Ritter v. Smith*, 726 F.2d 1505, 1516 (11th Cir. 1984), a panel of this court held that the statutory scheme was facially unconstitutional because of its mandatory death sentence component. We ordered the district court to grant a writ of habeas corpus unless Wayne Ritter was given a new sen-

---

1. These factual details are abundantly set forth in *Ritter v. State,* 429 So.2d 928 (Ala.1983), and *Ritter v. Smith,* 568 F.Supp. 1499, 1502–13 (S.D. Ala.1983).

2. John Louis Evans, III has since been executed.

3. Ala.Code § 13–11–2(a) (1975) (repealed 1981).

tencing hearing, but stayed the mandate pending review by the Supreme Court. On October 1, 1984, the Supreme Court denied certiorari. *Smith v. Ritter*, 469 U.S. 869, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984). This court then issued its mandate instructing the district court to issue the writ of habeas corpus if Alabama did not give Ritter a new sentencing hearing. On December 3, 1984, the district court entered an order making the mandate its judgment, and giving Alabama 180 days to resentence Ritter, i.e., until June 1, 1985.

The circumstances surrounding Ritter's case became more complicated when, just a week later, on December 10, 1984, the Supreme Court of the United States granted certiorari in *Baldwin v. Alabama*, 469 U.S. 1085, 105 S.Ct. 589, 83 L.Ed.2d 699 (1984). In *Ex Parte Baldwin*, 456 So.2d 129 (Ala. 1984), the Supreme Court of Alabama, expressly disagreeing with this court's *Ritter* opinion, had rejected the constitutional challenge to the statute. *Baldwin* was argued before the United States Supreme Court on March 27, 1985.

The state did not file a Rule 59(e) motion to alter or amend the district court's December 3, 1984 judgment on the basis of the grant of certiorari in *Baldwin*, nor did it seek a stay of the judgment or file an appeal. However, on April 15, 1985—within the 180–day period the district court had allowed for resentencing—the state moved in the district court for an extension of the time within which Alabama could resentence Ritter. The state based its motion on the grant of certiorari in *Baldwin* and the consequences that a holding against Baldwin would have for Ritter's case. The state's motion noted that a favorable decision in *Baldwin* might provide a basis for instituting proceedings in the district court or the Eleventh Circuit to modify or recall the mandate. The district court granted the state's motion on April 17, 1985, and extended the time for resentencing Ritter.

The Supreme Court's decision in *Baldwin* came down on June 17, 1985, holding that the Alabama capital sentencing procedures were not facially unconstitutional. *Baldwin v. Alabama*, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). The Supreme Court expressly addressed the conflict between this court's *Ritter* opinion and the Alabama Supreme Court's *Baldwin* opinion, and resolved the conflict in favor of the latter, i.e., in favor of the constitutionality of the statute. No petition for rehearing was filed in *Baldwin*, and the mandate of the United States Supreme Court issued on July 18, 1985. Less than three weeks later, on August 5, 1985, the state filed a motion in district court to dismiss Ritter's habeas corpus petition, in conformity with the Supreme Court's decision in *Baldwin*. On September 9, 1985, the state filed a Rule 60(b)(6) motion for relief from the district court's judgment of December 3, 1984, reiterating and perfecting the reasoning of the state's August 5 motion. On March 5, 1986, the district court entered its order granting the Rule 60(b)(6) motion and setting aside the December 3, 1984 order which conditionally granted the writ. Instead, the March 5, 1986 order denied all habeas relief, following the United States Supreme Court's decision in *Baldwin*. This March 5, 1986 order is the subject of the present appeal. We affirm.[4]

## II.  DISCUSSION

Federal Rule of Civil Procedure 60(b) sets forth possible bases for relief from a judgment or order. Grounds for relief include mistake, newly discovered evidence, and fraud. Rule 60(b)(6) is a catch-all ground: "any other reason justifying relief from the operation of the judgment." Rule 60(b)(6) is an extraordinary remedy, but it is within the district court's discretion to grant it in order to do justice. *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949).

4. Appeal No. 86–7235 is the appeal from the district court's March 5, 1986 order, which we affirm. The state had also moved this court to recall our original mandate in No. 83–7486, the original appeal. We consolidated the two, but, in light of our decision in No. 86–7235, the motion to recall is moot.

Ritter argues that a supervening change in the law can never present a sufficient basis for Rule 60(b)(6) relief. While the Supreme Court has never squarely addressed this point, our reading of cases from this and other circuits leads us to the opposite conclusion. The Eleventh Circuit has recognized that Rule 60(b) can be used to remedy a mistake in the application of the law. *Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838 (11th Cir.1982). Such reasoning was also implicit in our recent decision in *Wisecup v. James*, 790 F.2d 841 (11th Cir.1986), where we remanded a case in order to allow the petitioner to file a Rule 60(b) motion on the basis of an intervening Supreme Court decision. *See also Corn v. Kemp*, 772 F.2d 681 (11th Cir.1985) (Eleventh Circuit mandate recalled pending disposition of three similar cases which were pending before the en banc court), *vacated on other grounds*, — U.S. —, 106 S.Ct. 3326, 92 L.Ed.2d 732 (1986); *Wilson v. Fenton*, 684 F.2d 249, 251 (3d Cir.1982) ("A decision of the Supreme Court of the United States or a Court of Appeals may provide the extraordinary circumstances for granting a Rule 60(b)(6) motion...."); *Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir.1977) ("[t]he law of this circuit permits a trial judge, in his discretion, to reopen a judgment on the basis of an error of law.").[5]

Though the above-mentioned cases plainly allow Rule 60(b)(6) relief where there has been a clear-cut change in the law, it is also clear that a change in the law will not *always* provide the truly extraordinary circumstances necessary to reopen a case. For example, Ritter relies heavily on the Tenth Circuit case of *Collins v. City of Wichita*, 254 F.2d 837 (10th Cir.1958). In *Collins*, the plaintiffs challenged the constitutionality of a Kansas statute relating to the notice required to be given a landowner in condemnation proceedings. The statute was upheld and after appeal, the judgment became final. One year later, the United States Supreme Court decided

an identical case and invalidated the statute. The plaintiffs in *Collins* then sought Rule 60(b)(6) relief from their judgment. The Tenth Circuit affirmed the district court's denial of the motion, noting that "Litigation must end some time, and the fact that a court may have made a mistake in the law, when entering judgment, or that there may have been a judicial change in the court's view of the law after its entry, does not justify setting it aside." *Id.* at 839; *see also McKnight v. United States Steel Corp.*, 726 F.2d 333 (7th Cir.1984); *Seese v. Volkswagenwerk, A.G.*, 679 F.2d 336 (3d Cir.1982); *Lubben v. Selective Service System Local Board*, 453 F.2d 645 (1st Cir.1972); *Title v. United States*, 263 F.2d 28 (9th Cir.), *cert. denied*, 359 U.S. 989, 79 S.Ct. 1118, 3 L.Ed.2d 978 (1959); *Berryhill v. United States*, 199 F.2d 217 (6th Cir. 1952); *Loucke v. United States*, 21 F.R.D. 305 (S.D.N.Y.1957). *See generally*, Comment, *Federal Rule of Civil Procedure 60(b): Standards for Relief from Judgments Due to Changes in Law*, 43 U.Chi. L.Rev. 646 (1976).

◼ Our investigation thus leads us to conclude that something more than a "mere" change in the law is necessary to provide the grounds for Rule 60(b)(6) relief. Several factors in this case, in addition to the fact of the change in the law, persuade us that the circumstances are sufficiently extraordinary to warrant relief under Rule 60(b)(6).

A significant factor in this case is the fact that the previous, erroneous judgment of this court had not been executed. When a judgment has been executed a concomitantly greater interest in finality exists. This reasoning explains, in part, the result in *Collins*. The judgment in *Collins* was fully executed. The condemnor-city had already entered upon the land and installed pipes and appurtenances. 245 F.2d at 839 n. 2. Moreover, *Collins* involved vested property rights pertaining to real estate titles. The need for certainty with respect

---

**5.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

**1402**

to land titles warrants a great deference to the need for finality of judgments.

Similarly, in *Hall v. Warden*, 364 F.2d 495 (4th Cir.1966), the Fourth Circuit concluded that a supervening Supreme Court decision would not be grounds for reopening the court's grant of habeas relief. The Fourth Circuit had determined in Hall's case to apply the rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), retroactively. The Supreme Court held to the contrary in a later, different case. But at the time of the Supreme Court decision the *Hall* judgment had been executed, i.e., Hall had already been retried in a proceeding which suppressed a confession and resulted in a mistrial. Under these circumstances, the Fourth Circuit placed heavy reliance on the fact that Hall had already been retried and refused to reopen the judgment three years later and reinstate Hall's conviction.

Similar reasoning can be seen when courts must deal with the effect a change in law has on a consent decree or permanent injunction. Such judgments typically have both past effects and future implications. Generally courts have refused to undo the past, executed effects of the judgments, but they have, almost uniformly, recognized that it would be unjust to give prospective effect to a judgment now known to be improper. Thus, they have granted prospective 60(b)(6) relief. *See, e.g., Roberts v. St. Regis Paper*, 653 F.2d 166 (5th Cir. Unit B 1981) (acknowledging possibility of prospective modification of consent decree in light of change in law); *Marshall v. Board of Education*, 575 F.2d 417 (3d Cir.1978) (modifying injunction in light of intervening Supreme Court judgment); *cf. Pasedena City Board of Education v. Spangler*, 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976) (allowing modification of continuing injunction as exercise of courts' equitable powers).

The lesson of these cases is clear— mere finality of judgment is not sufficient to thwart Rule 60(b)(6) relief from an unexecuted judgment. If simple finality were sufficient to overcome a Rule 60(b)(6) motion then no such motions would ever be granted. However, once the judgment has been executed and its effects are no longer prospective, modification of the judgment ordinarily will be unavailable. Thus, the fact that the previous judgment of this court, though final, was unexecuted is a significant factor in the extraordinary circumstances favoring relief from the judgment in this case.

Related to the fact that the previous judgment in this case was unexecuted is the fact that there was only minimal delay between the finality of the judgment and the motion for Rule 60(b)(6) relief. It seems clear that time is relevant. The longer the delay the more intrusive is the effort to upset the finality of the judgment. In the instant case, the state's Rule 60(b)(6) motion was filed promptly,[6] with only a very brief delay after the time that the judgment became final.

A third factor supporting a finding of extraordinary circumstance is the close relationship between the two cases at issue, *Baldwin* and *Ritter*. The Supreme Court granted certiorari in *Baldwin* for the express purpose of resolving the dispute between these two cases. Thus, the situation before us is identical to that in *Tsakonites v. Transpacific Carriers Corp.*, 322 F.Supp. 722 (S.D.N.Y.1970). There, a supervening Supreme Court decision was the basis for granting a Rule 60(b)(6) motion more than five years after the original judgment. As in the present case, the intervening Supreme Court decision was rendered expressly to resolve a conflict between the earlier decision in *Tsakonites* and another case. Because of this close connection between the two cases, the court found the circumstances sufficiently extraordinary to justify disturbing the finality of the judgment.

An analogous situation arises where the two cases are related, not because the supervening decision was rendered to resolve a conflict between them but because they

6. With respect to the promptness of the state's motion, see discussion in text below.

arose out of the same transaction. Thus, in *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir.1975), *cert. denied,* 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976), the court found Rule 60(b)(6) relief appropriate in a situation where the intervening decisional change came in a case arising out of the exact same accident as that in which the *Pierce* plaintiffs were injured. *Pierce* distinguished *Collins* on precisely this ground; unlike *Collins*, the two relevant cases in *Pierce* were closely related, thereby creating the extraordinary circumstances necessary for Rule 60(b) relief. *Id.* at 722–23; *cf. Gondeck v. Pan American World Airways, Inc.*, 382 U.S. 25, 86 S.Ct. 153, 15 L.Ed.2d 21 (1965) (allowing successive petition for rehearing four years after denial of certiorari which erroneously let stand a lower court decision in conflict with Supreme Court precedent).

As was the case in *Tsakonites, Baldwin v. Alabama* was expressly decided to resolve the conflict between our decision in *Ritter v. Smith* and the Alabama's Supreme Court's decision in *Baldwin.* Further, the two cases are related insofar as they concern the constitutionality of the exact same statute. After the *Baldwin* decision, there can no longer be any doubt that Ritter was constitutionally sentenced the first time. As the district court correctly noted, this case and *Baldwin* are virtual legal twins. The Supreme Court's decision is directly on point,[7] and vitiates the need for the remedy which we granted.[8] Thus, the Supreme Court's decision in *Baldwin* properly carries great weight in satisfying the extraordinary circumstances which require relief from judgment.

Finally, considerations of comity argue for the relief urged by the state. A federal court's grant of a writ of habeas corpus upsets the finality of a state court judgment and is always a serious matter implicating considerations of comity. For this reason, fundamental fairness is the polestar of habeas relief. *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). In this case, *Baldwin* has established that Ritter's sentencing was not constitutionally deficient. *Baldwin* has vitiated the need for the remedy granted by our previous judgment. Rule 60(b)(6) affords us the opportunity to avoid the imposition of the needless remedy. The state has a strong interest in assuring that constitutionally valid state court judgments are not set aside and can be carried out without undue delay.

Evaluating all of the circumstances of this case, we conclude that the circumstances are extraordinary and that relief pursuant to Rule 60(b)(6) is justified.

Ritter suggests several reasons why the foregoing analysis should be rejected. First, he argues that the state's failure to suspend the finality of the judgment caused the district court to lack jurisdiction to enter its April 17, 1985 order extending the period of time for resentencing. We find no merit in this argument. Fed.R.Civ.P. 6(b)(1) gives the district court discretion to enlarge time periods if done prior to the expiration of the original time period. The district court's December 3, 1984 judgment gave Alabama 180 days to resentence Ritter; thus, the district court's April 17, 1985 order came well within the original time period, and well within the district court's authority under Rule 6(b)(1). Significantly, the extension of time was not inconsistent with this court's mandate,

---

**7.** In footnote 8 of the *Baldwin* opinion, 472 U.S. at 386 n. 8, 105 S.Ct. at 2735 n. 8, the Supreme Court reserved decision on the constitutionality of a death sentence imposed by a judge who actually considered the jury's verdict. At oral argument, counsel for Ritter conceded that there is nothing in the record in this case to distinguish this case from *Baldwin* in this regard. Our own review of the record confirms this.

**8.** Any resentencing of Ritter could simply be an unnecessary mirror image of his original sentencing. If the grant of habeas relief is left undisturbed, it would result in a resentencing that could, under *Baldwin*, properly be done in precisely the same way that it was originally done. To require resentencing under these circumstances would be to exalt form over substance. Only the strongest of reasons, therefore, could justify upsetting the original state judgment.

which specified no time frame for resentencing.

Moreover, *Standard Oil Co. of California v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976), rejected the proposition "that an appellate court's mandate bars the trial court from later disturbing the judgment entered in accordance with the mandate." *Id.* at 18, 97 S.Ct. at 31. The Supreme Court held that leave of the appellate court, or recall of the appellate court's mandate, was not a precondition to the authority of a district court to entertain a Rule 60(b) motion such as the one at issue here. Of course, Rule 60(b) is not a procedural vehicle for an automatic retrial in the district court after an appellate court issues its mandate. The mandate of an appellate court to a district court must be scrupulously adhered to by the district court on remand as the law of the case in all but the most extraordinary of situations. For the reasons previously discussed in this opinion, we conclude that the district court did not err in finding that the particular facts of this case constitute such extraordinary circumstances.

■ Second, Ritter argues that the state should not be permitted to benefit from Rule 60(b)(6) relief. He argues that the res judicata-habeas corpus relationship is a one-way street; res judicata does not bar habeas corpus relief in favor of prisoners, but, Ritter argues, res judicata does operate and should operate to bar relief in favor of the state. We note that res judicata is not at issue in this case. Although the related doctrine, law of the case, is at issue, Rule 60(b)(6) is an available procedure to circumvent the law of the case. Nothing in the language of the Rule, nor in the case law, suggests that Rule 60(b)(6) relief should be unavailable to a state in habeas corpus proceedings. *See Hall v. Alabama*, 700 F.2d 1333 (11th Cir.) (entertaining a state's Rule 60(b)(6) motion in a habeas corpus proceeding), *cert. denied*, 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983).

Were the roles in this case reversed, it is clear that Ritter could have received the benefit of an intervening favorable Supreme Court ruling inconsistent with a decision of our court that had sustained the constitutionality of the statute. We think this factor adds some weight to the circumstances favoring the grant of Rule 60(b)(6) relief to the state.

Third, Ritter argues that the state failed to avail itself of opportunities which it had to suspend the finality of the district court's December 3, 1984 order. If true, this factor would weigh against reopening a final judgment. The RESTATEMENT (SECOND) OF JUDGMENTS § 74 (1982) counsels that relief from judgment should be denied if the party was unreasonably dilatory in seeking relief. Ritter argues that the state could have prevented the district court's order from becoming final by filing a Rule 59(e) motion based on the pendency of the *Baldwin* case. Certiorari was granted in *Baldwin* seven days after the district court issued its December 3, 1984 order. There were three days remaining within which a motion could be made to alter or amend the judgment. The state also had twenty-three days to file a notice of appeal. The state sought neither post-judgment relief nor did it appeal and, consequently, the district court's order became final. The state did not begin to seek relief until April 15, 1985, four months later, based on precisely the same information available to it in December—the pendency of *Baldwin*.

■ We conclude that the state did not behave unreasonably in failing to seek relief immediately upon the decision to grant certiorari in *Baldwin*. The mere decision of the Supreme Court to hear the issues presented in *Baldwin* did not provide a substantive basis for changing the district court's December 3, 1984 judgment implementing our mandate. It is clear that any motion to alter the district court's December 3, 1984 order, or any appeal therefrom, would have been futile; it is well established that the grant of certiorari has no

precedential value.[9] The Supreme Court's grant of certiorari in *Baldwin did,* however, provide a basis for seeking an extension of time for the resentencing of Ritter.[10] That extension was sought once the need for it became evident, i.e., when it became clear that the *Baldwin* decision would not come down prior to the expiration of the 180 days allotted for Ritter's resentencing. Therefore, it cannot be said that the state was dilatory in its actions; it simply declined to file a futile, and unjustified motion for relief. Instead, it made a timely motion for an extension of time for resentencing Ritter, and then filed its Rule 60(b)(6) motion within the extended time and promptly after the Supreme Court's judgment in *Baldwin.*

 Finally, Ritter argues that he was entitled to rely on our judgment and the December 3, 1984 order of the district court granting him a new sentencing hearing. Following the denial of certiorari in Ritter's case, Ritter doubtless felt relieved from his sentence of death. We recognize some force to Ritter's assertion that it is unfair to thereafter reinstate the previously imposed and then vacated death sentence. We are not in the practice of writing decisions merely to raise false hopes, nor do we minimize the importance of Ritter's reliance. However, Ritter never was fully relieved from the possibility of a death sentence. He knew that the state would again seek the death penalty; he must have expected there was a good chance he would be sentenced to death again. Thus, Ritter's sense of relief was merely temporary; at this point he could only have had the expectation of a delayed decision as to his fate. Consequently, the force of Ritter's reliance on the judgment is diminished, and cannot outweigh the oth-

erwise extraordinary circumstances supporting the reinstitution of the death sentence.

For the foregoing reasons, we affirm the district court's order granting the State's Rule 60(b)(6) motion.

AFFIRMED.

---

**9.** Though the state did not appeal the district court's order, this is not a case like those in which Rule 60(b) relief is sought merely as a substitute for timely appeal. *See, e.g., Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Parks v. U.S. Life & Credit Corp.,* 677 F.2d 838 (11th Cir.1982). The state here did not purposefully or negligently avoid an appellate remedy which was available; on the contrary, it sought the only form of relief

possible—an extension of time followed by a Rule 60(b) motion. Neither *Ackermann* nor *Parks* require a party to file a groundless appeal merely to preserve their Rule 60(b) rights.

**10.** Of course, it was not possible to obtain an extension of time for filing a motion to alter or amend the December 3, 1984 order. Fed.R. Civ.P. 6(b).