[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14998
_____

D.C. Docket No. 3:05-cv-00369-RH


MICHAEL DUANE ZACK, III,

                                        Petitioner - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                        Respondents - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

January 12, 2018

Before WILLIAM PRYOR, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Petitioner-Appellant Michael Duane Zack, III was convicted and sentenced to death by a Florida court in 1997 for sexual assault, robbery, and murder. Zack's conviction and sentence were upheld on direct appeal, and the Florida courts denied his claims for postconviction relief.

More than four years after the deadline to file for federal habeas relief had elapsed, Zack sought federal habeas relief under 28 U.S.C. § 2254. The district court denied relief, finding eight of Zack's claims untimely and one without merit. Sitting en banc, we reviewed the timeliness of the eight claims and affirmed the district court. The Supreme Court denied certiorari.

Ten months after the Supreme Court denied certiorari, Zack filed a Rule 60(b)(6) motion—the subject of the operative appeal—for relief from final judgment based on extraordinary circumstances. The district court denied the requested relief and also denied Zack's subsequent motion for reconsideration of the decision. Zack now requests relief from this Court.

This Court granted a Certificate of Appealability ("COA") on two issues concerning the district court's denial of Zack's Rule 60(b)(6) motion: (1) whether the district court abused its discretion in not considering Zack's mental impairments and the delayed appointment of collateral counsel for the purposes of finding extraordinary circumstances warranting equitable tolling under the Supreme Court's decision in *Holland v. Florida*, 560 U.S. 631 (2010); and (2)

2

whether the district court abused its discretion in not granting Zack an evidentiary hearing to further explore whether Zack's mental impairments or the delayed appointment of collateral counsel caused Zack to miss the filing deadline for his federal habeas petition under our precedent in *Hunter v. Ferrell*, 587 F.3d 1304 (11th Cir. 2009). After a thorough review of the record, and with the benefit of oral argument, we now affirm the district court's denial of Zack's Rule 60(b)(6) motion.

## I.

## A. Trial Proceedings and Evidence regarding Zack's Mental Impairments

In 1997, Zack was convicted and sentenced to death for his role in the robbery, sexual assault, and murder of Ravone Kennedy Smith. *See Zack v. State*, 753 So. 2d 9, 14 (Fla. 2000) (the "*Direct Appeal*"). The facts of Zack's conduct do not factor into the analysis of the issues presented by the instant appeal, and the parties do not dispute the detailed description of the facts set forth by the Florida Supreme Court in its decision affirming Zack's conviction and sentence. *See id.* at 13–14, 17–19. For those reasons, we do not repeat them here.

During the guilt and penalty phases of his trial, Zack offered testimony about his mental impairments and history of childhood abuse as factors mitigating his behavior. For example, Zack presented evidence that his mother drank heavily when she was pregnant with him and that he was born prematurely after his mother

3

was in a car accident that initiated early labor.   In addition, Zack presented evidence that he ingested ten ounces of cherry vodka at the age of three, and that the physicians who treated him during his hospitalization predicted his early exposure to such a heavy dose of alcohol would likely yield permanent brain damage.  Zack also presented evidence that he suffered extensive child abuse at the hands of his stepfather.   Finally, mental-health experts also testified during the proceedings.   They opined variously that Zack suffered from fetal alcohol syndrome, post-traumatic stress disorder, chronic depression, addiction, and possible brain damage.  They placed his IQ, at the lowest, at 79.

After hearing all of the evidence, the jury recommended a sentence of death by a vote of eleven to one.  *Direct Appeal*, 753 So. 2d at 12.  On November 14, 1997, the trial court followed the jury's recommendation and sentenced Zack to death.  *Id.*

## B. Post-Conviction Proceedings

On direct appeal, the Florida Supreme Court affirmed Zack's conviction and sentence, *id.* at 26, and on October 2, 2000, the United States Supreme Court denied Zack's petition for writ of certiorari. *Zack v. Florida*, 531 U.S. 858 (2000). The limitations period for a federal habeas claim challenging a state-court conviction is one year,  28 U.S.C. § 2244(d)(1)(A), but as of October 2, 2001, one year after the Supreme Court denied review, Zack had not yet filed either a state or

federal application for collateral review.  With no petition filed in either state or federal court during the one-year period, Zack missed the deadline for filing a federal habeas claim.

On July 11, 2001, approximately three months before the statute of limitations expired, the state trial court granted Zack's request for post-conviction counsel and appointed Glenn Arnold as Zack's collateral counsel.  Arnold failed to present Zack's post-conviction claims to the court in a timely fashion.  On December 26, 2001—more than two months after the federal limitations period expired—Arnold finally filed a motion in state court seeking an extension of time to file a motion for collateral review under Florida Rule of Criminal Procedure 3.850.  *See Zack v. Tucker*, 704 F.3d 917, 918 (11th Cir. 2013).  The state circuit court granted the extension and Arnold filed a timely Rule 3.850 motion on Zack's behalf on May 10, 2002.  *Id.*  Arnold did not seek an extension of time to file in federal court, and the state court's extension did not affect the timeliness of Zack's federal habeas petition under 28 U.S.C. § 2254.

On October 21, 2002, two months after the United States Supreme Court rendered its decision in *Atkins v. Virginia*, 536 U.S. 304 (2002), Zack filed an amended Rule 3.850 motion (the "Rule 3.850 motion") in the state court, raising six claims for relief, including one premised on *Atkins* and based on Zack's mental impairments.  After holding a hearing, the state court denied Zack's Rule 3.850

5

motion in its entirety, including the single *Atkins* claim.   The Florida Supreme Court affirmed the denial of the Rule 3.850 motion as well as a subsequent, related Rule 3.851 motion.

On September 28, 2005, almost four years after the AEDPA limitations period expired, Zack filed a federal habeas petition under 28 U.S.C. § 2254, setting forth nine claims for relief.  Zack filed an amended federal habeas petition on March 20, 2008 (the "§ 2254 petition"), after exhausting two additional claims in state court.

Upon review of Zack's § 2254 petition, the district court dismissed eight of Zack's claims as untimely but found that Zack's *Atkins* claim was timely.  The district court reasoned that the one-year limitations period for a federal habeas claim challenging a state-court conviction runs from one of four possible dates, two of which applied to Zack:  first, the date when the petitioner's conviction became final based on the conclusion of direct review (affecting his eight non-*Atkins* claims); and, second, the date when the Supreme Court first recognized a relevant constitutional right that is retroactively applicable to cases on collateral review (affecting only his *Atkins* claim).  *See* 28 U.S.C. § 2244(d)(1)(A), (C). Because more than one year had passed without any tolling between the date Zack's conviction became final and the date he filed his federal petition, but less than one year had passed between the time that the Supreme Court decided *Atkins*

6

and when Zack filed his federal petition, the district court concluded that Zack's *Atkins* claim was timely while his eight other claims were untimely and must be dismissed.    Accordingly, the district court dismissed Zack's eight non-*Atkins* claims in an order dated November 17, 2008 (the "November 2008 Order").

After the merits of the *Atkins* claim were briefed and a hearing was held, the district court dismissed Zack's remaining *Atkins* claim.   The district court noted that "[t]he record demonstrates without genuine dispute that Mr. Zack's IQ is at least 79," and thus that, "[a]s the record already makes clear, four Wechsler Intelligence Scale tests have uniformly concluded that Mr. Zack's IQ is significantly above the minimum threshold for mental retardation."   *Zack v. Crosby*, No. #:05-cv-00369-RH, Order Den. *Atkins* Claim 11–12, ECF No. 36 (N.D. Fla. Mar. 26, 2009).

Zack sought, and the district court granted, a COA on the question of whether Zack's single timely claim in his federal habeas petition could revive his eight untimely claims.  The question raised the issue of whether *Walker v. Crosby*, 341. F.3d 1240 (11th Cir. 2003), which supported Zack's position that his timely *Atkins* claim rescued his eight untimely claims from the statute of limitations bar, remained good law after *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).  Considering that issue en banc, we overruled *Walker* and held AEDPA's limitations period applied independently to each claim.  *Zack v. Tucker*, 704 F.3d at 918.   We

therefore affirmed the district court's denial of relief to Zack, *id*., and the Supreme

Court subsequently denied Zack's petition for certiorari review. *Zack v. Crews*,

134 S. Ct. 156 (2013).

### C. Rule 60(b)(6) Motion

On August 25, 2014, Zack filed the operative motion in the federal district

court pursuant to Fed. R. Civ. P. 60(b)(6) (the "Rule 60 motion"), seeking relief

from the November 2008 Order. Grounding his motion on the development of the

law under *Holland v. Florida*, 560 U.S. 631 (2010), *Martinez v. Ryan*, 566 U.S. 1

(2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), Zack argued that he was

entitled to equitable tolling under these Supreme Court decisions, all of which were

issued while Zack's case was still pending before the Eleventh Circuit.

Zack noted that he had previously alerted this Court to the change in the law

under *Holland* and *Martinez* "in footnote 3 of his initial en banc brief to the

Eleventh Circuit." *Zack v. Crosby*, Mot. to Am. Pet. for Writ of Habeas Corpus 2

(ECF No. 56) (N.D. Fla. Aug. 26, 2014). "In particular," Zack added, he

"informed the en banc court that this Court had relied upon the pre-*Holland* and

pre-*Martinez* law of the Eleventh Circuit in concluding that Mr. Zack was not

entitled to equitable tolling and denying a certificate of appealability on that issue."

*Id.* We chose not to substantively address Zack's equitable-tolling arguments in

our en banc decision and instead focused on determining the effect of *Pace* on *Walker*.

On September 4, 2014, the district court denied Zack's Rule 60 motion.  In reaching this conclusion, the district court reasoned both that its initial ruling finding the eight claims untimely was correct and that even if it had not been, Rule 60 could provide no relief.  Order Den. Rule 60 Mot. 2–3 (ECF No. 58) (Sept. 04, 2014).

On December 23, 2014, Zack filed an application for a COA with this Court seeking review of the district court's decision denying his Rule 60 motion.  A member of this Court granted his request and certified the following two questions for review:

I.    In light of *Holland v. Florida*, 560 U.S. 631 (2010), did the district court abuse its discretion in denying Zack's Rule 60(b)(6) motion without determining whether Zack's mental impairment and the timing of the appointment of collateral counsel, collectively, amount to extraordinary circumstances?

II.   Did the district court abuse its discretion in denying Zack an evidentiary hearing, under *Hunter v. Ferrell*, 587 F.3d 1304, 1309–10 (11th Cir. 2009), to further investigation and factual development and proceedings to determine whether a causal connection exists between Zack's mental impairment and the timing of the appointment of collateral counsel, collectively, on the one hand, and the untimely filing of his petition for relief under 28 U.S.C. § 2254, on the other?

**II.**

9

This Court reviews the district court's denial of a Rule 60(b)(6) motion for abuse of discretion. *High v. Zant*, 916 F.2d 1507, 1509 (11th Cir. 1990). Under this standard, we affirm unless we determine that the district court "applied an incorrect legal standard, failed to follow proper procedures in making the relevant determination, or made findings of fact that are clearly erroneous." *Lugo v. Sec'y, Fla. Dep't Corr.*, 750 F.3d 1198, 1207 (11th Cir. 2014) (citing *Mincey v. Head,* 206 F.3d 1106, 1137 n.69 (11th Cir. 2000)).

We review a district court's decision to deny an evidentiary hearing on equitable tolling in a Rule 60(b) proceeding for an abuse of discretion. *See Lugo*, 750 F.3d at 1206; *Cano v. Baker,* 435 F.3d 1337, 1342 (11th Cir. 2006); *see also Schriro v. Landrigan,* 550 U.S. 465, 473–75 (2007).

## III.

As the catchall provision of Rule 60(b), Rule 60(b)(6) authorizes relief from judgment for "any other reason that justifies relief." But, in *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005), the Supreme Court clarified that "a movant seeking relief under Rule 60(b)(6) [must] show 'extraordinary circumstances' justifying the reopening of a final judgment." The Supreme Court noted that such extraordinary circumstances "will rarely occur in the habeas context." *Id.* And even then, we have explained, "whether to grant the requested relief is . . . a matter for the district

10

court's sound discretion." *Lugo*, 750 F.3d at 1210 (citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1317 (11th Cir. 2000)).

Because Zack presented his claim for equitable relief to the district court under Rule 60(b)(6), he must first show a qualifying "extraordinary circumstance" under *Gonzalez* justifies reopening his final judgment. If Zack can pass through this gate, we must then consider whether Zack has made the necessary showing to warrant equitable tolling. Under *Holland v. Florida*, 560 U.S. 631 (2010), and its progeny, equitable tolling may be warranted in the event of an extraordinary circumstance. Although the distinct categories of extraordinary circumstances that support reopening of a final judgment under Rule 60(b)(6) and those that support equitable tolling may overlap, an extraordinary circumstance must independently warrant each particular relief sought.

Zack argues that he presented two extraordinary circumstances justifying Rule 60(b)(6) relief. First, Zack contends that the Supreme Court's ruling in *Holland v. Florida* and the timing of the Eleventh Circuit's en banc decision overturning *Walker v. Crosby* constitute changes in law that amount to an extraordinary circumstance justifying reopening Zack's case under Rule 60(b)(6). In support of this position, Zack asserts that he "could not have anticipated the en banc decision to overrule existing law, nor could he have expected the expansion and clarification of equitable tolling to AEDPA cases under *Holland*." Pet'r-

11

Appellant Initial Br. 21.  Zack further argues that "[b]ecause *Holland* was not a necessary avenue for relief until after this Court had overruled *Walker* and because Zack sought to alert the courts to his *Holland* claim for equitable tolling at the earliest practicable moment," the "district court should have recognized that this case fell within the 'limited set of circumstances' envisioned by the Supreme Court in *Gonzalez*, 545 U.S. at 529."  *Id.* at 22.

Second, Zack contends that the "systemic failures of the State to appoint counsel in a reasonable timeframe . . . merit[ ] relief under Rule 60(b)(6)."

While the second circumstance is troubling, we cannot conclude that either rises to the level of the "extraordinary circumstances" necessary to allow reopening of a final judgment under Rule 60(b)(6).  Consequently, the district court did not abuse its discretion in denying Zack's Rule 60(b)(6) motion.

## A. Changes in the Law

First, as *Gonzalez* makes clear, changes in the law do not, on their own, constitute extraordinary circumstances justifying relief under Rule 60(b)(6).  *See Gonzalez*, 545 U.S. at 536.  In the underlying decision in *Gonzalez*, the district court dismissed Gonzalez's federal habeas petition as untimely under then-existing Eleventh Circuit precedent.  *Id.* at 527.  After the district court's decision, the Supreme Court announced a new AEDPA statute-of-limitations tolling rule in *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), which, had it been in effect earlier, would

12

have permitted Gonzalez to pursue his petition.  Based on the change in law that *Artuz* created, Gonzalez filed a Rule 60(b)(6) motion arguing that his case should be reopened and that his petition should be deemed timely.  The district court denied the Rule 60(b)(6) motion and the Eleventh Circuit affirmed.  *Gonzalez*, 545 U.S. at 527–28.

As relevant here, the Supreme Court in *Gonzalez* held that the district court properly denied the Rule 60(b)(6) motion because the change in the law did not constitute "extraordinary circumstances" justifying the reopening of the case.  *Id.* at 536–37.  The Supreme Court opined that "[i]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation."  *Id*. at 536.  Still further, the Supreme Court reasoned that if Gonzalez were correct, changes in the law would be a two-way street, justifying not only reopening decisions that disfavored petitioners when the law became more advantageous, but also justifying reopening decisions that otherwise favored petitioners should the law become harsher:  If "*Artuz* justified reopening long-ago dismissals based on a lower court's unduly parsimonious interpretation of [the statute of limitations], then *Pace v. DiGuglielmo* . . . would justify reopening long-ago grants of habeas relief based on a lower court's unduly *generous* interpretation of the same tolling provision."  *Id.* at 536–37.

13

Since *Gonzalez*, we have repeatedly found that particular changes in the interpretation of federal habeas law fall short of the requisite extraordinary circumstance justifying Rule 60(b)(6) relief. In *Howell v. Sec'y, Fla. Dep't Corr.*, 730 F.3d 1257, 1261 (11th Cir. 2013), for example, we upheld the district court's denial of a Rule 60(b)(6) motion premised on the change of law in *Holland*, concluding that the change of law resulting from *Holland* "is not an extraordinary circumstance under Rule 60(b)."

Likewise, in *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014), we held that "the change in the decisional law affected by the *Martinez* [*v. Ryan*, 566 U.S. 1 (2012)] rule is not an 'extraordinary circumstance' sufficient to invoke Rule 60(b)(6)."

Notwithstanding our holdings in *Howell* and *Arthur* however, we have also concluded that certain, limited changes in intervening law can occasionally constitute the necessary extraordinary circumstance. In particular, we have found extraordinary circumstances may exist when we can identify the case under review and a prior case as "legal twins." *See Ritter v. Smith*, 811 F.2d 1398, 1402–03 (11th Cir. 1987). So, for example, if a supervening decision is issued in a case arising out of the same transaction as the petitioner's case, or if two cases are related insofar as they concern the constitutionality of the same statute, a petitioner's case may satisfy this "legal twin" status. *See id*.

14

But that is not the case here. We cannot say that Zack's case presents a "legal twin" of any other case involving a change in the law. Rather, the changes in the law Zack points to are much closer to those involved in *Gonzalez*, *Howell*, and *Arthur*.

As noted above, we have specifically held that the change in law brought about by *Holland* cannot constitute an extraordinary circumstance for purposes of reopening a case under Rule 60(b). And if the change in law created by *Holland* cannot constitute an extraordinary circumstance, neither does the change in law created by our en banc decision overturning *Walker*.

*Walker* allowed petitioners to revive claims that had already expired—but only if a timely, valid claim later arose. Here, Zack could not have relied on *Walker* when he blew past the statute of limitations on his eight untimely claims because he had no way of knowing that the Supreme Court would later issue *Atkins*, on which his only timely claim was ultimately based. As a result, the equitable considerations driving *Holland* do not exist with respect to Zack's *Walker* claim, and there is even less of a basis to find an extraordinary circumstance in this case than existed in *Howell*, where we found no extraordinary circumstances based on the change in law created by *Holland*. As a result, Zack cannot rely on the changes in the law that he identifies to establish the

15

extraordinary circumstances necessary to allow the reopening of a final judgment on a Rule 60(b)(6) motion.

## B. "System Failures"

Zack's additional argument, concerning the State's delay in appointing him counsel, likewise fails to constitute an extraordinary circumstance for the purposes of Rule 60(b)(6) relief.

We have explained that "a true 60(b) motion within the meaning of *Gonzalez* [*v. Crosby*, 545 U.S. 524 (2005),] . . . attack[s] not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1210 n.11 (11th Cir. 2014) (citation and internal quotation marks omitted). The state's late appointment of collateral counsel is very troubling.[1] And under the

---

[1] Here, Florida appears not to have complied with its own rules. *See* Fla. R. Crim. P. 3.851(b)(3) (1996) (requiring appointment of counsel within 30 days after the judgment and sentence become final). And while we recognize that we lack the power to control Florida's compliance with its own rules, that fact doesn't make Florida's noncompliance any less troubling—particularly since Florida adopted the 30-day requirement after its Supreme Court Committee on Postconviction Relief in Capital Cases "recognized that, ***to make the process work properly***, each death row prisoner should have counsel available to represent him or her in postconviction relief proceedings." *See id.* at Ct. Comm. 1993 Adoption (emphasis added). Indeed, so important did Florida deem timely appointment that Florida's current version of Rule 3.851, Fla. R. Crim. P., appoints counsel contemporaneously with the Florida Supreme Court's issuance of its mandate on direct appeal and, to our concurring colleague's point, requires all conflicts of interest and other appointment issues to be resolved within 45 days thereafter—a far cry from the nine months that passed in Zack's case. Fla. R. Crim. P. 3.851(b).

And turning to proceedings we do have jurisdiction over, as a practical matter, the late appointment of state counsel—particularly when it does not occur until three-quarters of the way through the statutory period—can have an effect on a petitioner's ability to meet AEDPA's limitations period because a petitioner need not seek § 2254 relief if he obtains state

correct circumstances, it might establish the extraordinary circumstances necessary for equitable tolling.[2]   But it cannot establish the extraordinary circumstances necessary to reopen a final judgment under Rule 60(b)(6) in this case.

Zack was aware when he filed his § 2254 petition in this case that the state did not appoint counsel until nine months into his year to file his federal petition. Nothing about the integrity of the federal proceedings prevented him from raising the issue at that time.   And nothing new about the state's late appointment of counsel has been revealed or has otherwise disclosed a defect in the federal proceedings since the district court issued its order denying and dismissing Zack's

---

postconviction relief, and he cannot obtain § 2254 relief without first exhausting his state remedies, in any case.  We simply don't know whether Zack has a meritorious federal claim because we cannot consider his claims since counsel missed the filing deadline. The problem is not, as our colleague incorrectly suggests we "assume," "that every state prisoner sentenced to death should file a federal petition," Conc. at 22, but rather, that a state's extremely late appointment of counsel, resulting in counsel's missing of the filing deadline, should not be the *sole* reason why a state prisoner who may have a meritorious claim is precluded from seeking federal relief.

Finally, we are disappointed that our colleague would use the Smith family's ongoing tragedy to excuse what have become routine failures in Florida by state-appointed counsel to comply with a simple filing deadline, *see Lugo*, 750 F.3d at 1215-26 (Martin, J., concurring) (identifying more than 30 capital defendants whose counsel missed the deadline for filing § 2254 claims).  *See* Conc. at 21-22.   The Smith family has had to endure the unimaginable and is surely entitled to justice.  Upon this we all agree.  But justice necessarily includes affording defendants their constitutionally guaranteed rights to pursue habeas relief.

[2] In particular, where a state collateral proceeding is effectively the first opportunity where an ineffective-assistance-of-counsel claim can be raised and the state's failure to timely appoint counsel to raise such a claim amounts to a petitioner's effective absence of counsel, perhaps the existence of extraordinary circumstances may be satisfied. *See Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). We need not and do not opine on this issue because we do not reach it since Zack has not established extraordinary circumstances warranting the reopening of a final judgment under Rule 60(b)(6).

17

petition.    For these reasons, Zack cannot establish extraordinary circumstances supporting the reopening of the final judgment under Rule 60(b)(6).

Because Zack has failed to establish the two required sets of extraordinary circumstances that justify reopening a final judgment and equitable tolling, we conclude that the district court did not abuse its discretion in denying Zack's Rule 60(b) motion.

## IV.

We also conclude that the district court did not abuse its discretion in denying Zack an evidentiary hearing to prove his equitable-tolling allegations under *Hunter v. Ferrell*, 587 F.3d 1304 (11th Cir. 2009).    An evidentiary hearing would have served no useful purpose because Zack alleged no facts that could have warranted relief if proven true.    *See Chavez v. Sec'y Fla. Dep't Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011) ("[I]f a habeas petition does not allege enough specific facts, that, if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing."); *see also id.* at 1061 ("The allegations must be factual and specific, not conclusory.").    Accordingly, the district court did not abuse its discretion by declining to grant Zack an evidentiary hearing.

18

## V.

For the reasons set forth above, we conclude that the district court did not abuse its discretion in denying Zack's Rule 60(b)(6) motion without an evidentiary hearing.

**AFFIRMED**.

WILLIAM PRYOR, Circuit Judge, concurring:

I concur in the panel opinion except that I do not join the gratuitous statement that there is something "very troubling" about "[t]he state's late appointment of collateral counsel." Majority Op. at 16. We lack the power and expertise to manage state post-conviction review, the delay is irrelevant to a motion under Rule 60(b), and I do not share my colleagues' concern that "the process" has failed Zack. Majority Op. at 16 n.1 (emphasis omitted).

The panel opinion points out that "Florida appears not to have complied with its own rules," Majority Op. at 16 n.1, but we should not comment on the delay. How a state exercises its "sovereign power to punish offenders," *Coleman v. Thompson*, 501 U.S. 722, 748 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 128 (1982)), within the bounds of the Constitution is the business of the state. And states have *no obligation* to provide collateral counsel "[b]ecause a prisoner does not have a constitutional right to counsel in state postconviction proceedings." *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017). Nor can we "instruct[] state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). And states may have understandable reasons for delays in appointing counsel that are not immediately apparent on federal review: a prisoner might initially refuse further review or counsel, or scheduling, funding, or conflict-of-interest problems might slow appointment. *See,*

20

*e.g.*, *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1202 (11th Cir. 2014) (pointing out that the petitioner's original counsel "withdrew from . . . representation . . . because it was representing [the petitioner's] codefendant" and that the replacement post-conviction counsel "had a personal conflict of interest . . . [and] asked to be permitted to withdraw"). The panel opinion fails to examine the cause of the delay, but concludes that it is inherently troubling. Federal courts tasked with resolving narrow constitutional questions in habeas proceedings should not concern themselves with plenary review of state processes.

The delay is also irrelevant to this appeal because an alleged defect in a *state* proceeding cannot support a motion under Rule 60(b). The panel opinion correctly acknowledges that a motion under Rule 60(b) attacks only a "defect in the integrity of the *federal* habeas proceedings." *Lugo*, 750 F.3d at 1210 n.11 (emphasis added) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 532 & n.4 (2005)). And yet my colleagues comment on a detail of state post-conviction review that has no bearing on whether Zack can revive his federal litigation.

The panel opinion also suggests that prompt appointment is necessary "*to make the process work properly*," Majority Op. at 16 n.1 (quoting Fla. R. Crim. P. 3.851 Ct. Comm. 1993 Adoption), but this appeal is an odd place to express this concern. Zack received post-conviction counsel, and the delay did nothing to prevent Zack from obtaining full collateral review in state court. Indeed, the state

granted Zack an extension of time to file a motion for state collateral review, Majority Op. at 5, and the Florida Supreme Court denied relief only after thoroughly reviewing Zack's arguments. *See Zack v. State*, 911 So. 2d 1190 (Fla. 2005). And, were this not enough process, Zack has pursued federal habeas relief for over 12 years and obtained review of his claim under *Atkins v. Virginia*, 536 U.S. 304 (2002). *See* Majority Op. at 6–9. This Byzantine litigation has yielded exactly zero meritorious claims and has only delayed justice for the people of Florida and especially for the family of the woman Zack murdered, sexually assaulted, and robbed in 1996. *See Zack v. State*, 753 So. 2d 9, 12–15 (Fla. 2000). My colleagues assume that every state prisoner sentenced to death should file a federal petition. I do not share that assumption. When a state prisoner has had a trial, direct appeal, and state collateral review, he is presumed to be guilty. And if this prisoner misses a federal deadline for additional rounds of collateral review, I do not assume that an injustice has occurred. Indeed, I voted against granting Zack a certificate of appealability to pursue this appeal because his arguments were patently frivolous.

22